**Russ CALHOUN, Plaintiff–Appellant,**

v.

**Bob D. GAINES and Kenneth Walker, Defendants–Appellees.**

No. 91–6152.

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1992.

Michael A. Taylor, Hammons, Taylor & Associates, Oklahoma City, OK (Mark Hammons, of Hammons, Taylor & Associates, on the brief), for plaintiff-appellant.

Jeff Mixon, Asst. Atty. Gen. Oklahoma City, OK (Susan B. Loving and Robert A. Nance, on the brief), for defendants-appellees.

Before SEYMOUR and BARRETT, Circuit Judges, and HUNTER, Senior District Judge.[*]

ELMO B. HUNTER, Senior District Judge.

■ This appeal arises out of a suit brought by Russ Calhoun, pursuant to 42 U.S.C. § 1983. Calhoun, a ten-year college professor at Oklahoma City Community

---

[*] Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri, sitting by designation.

College (OCCC), alleged that he was deprived of a property interest in his employment, without due process of law. Initially, the district court ruled against Appellant Calhoun, on summary judgment, on grounds that the process afforded Calhoun was constitutionally adequate and that, in any event, appellees in the case are qualifiedly immune from liability. Subsequent to this ruling, Calhoun moved the district court for relief from its summary judgment on the grounds that the Court had erred in finding that appellant had received a constitutionally adequate "post-termination hearing."[1] Following careful review of the record, the district court denied Calhoun's motion and reaffirmed its earlier Order, this time on the sole ground that appellees are qualifiedly immune.[2]

On appeal, Calhoun urges that the property interest in his employment and his right to constitutionally adequate process, before such property interest could be terminated, is clearly established in the law. He further urges that factual issues are present that prevent disposition of this matter by summary judgment. We agree and, therefore, reverse the decision of the district court, in part, and affirm it, in part.

### I.

This Court's review of the district court's summary judgment order is plenary. *Archer v. Sanchez*, 933 F.2d 1526, 1529 (10th Cir.1991). This *de novo* review applies the same legal standard as that prescribed for the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *Johnson v. Independent School Dist. No. 4*, 921 F.2d 1022, 1025 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1685,

114 L.Ed.2d 79 (1990) (citations omitted). Application of this standard, as noted above, requires that we examine the factual record, including any reasonable inferences arising from it, in the light most favorable to the party opposing summary judgment. *Id.; Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990). Accordingly, our recitation of facts here will be in the light most favorable to Appellant Calhoun, as averred by him and supported by affidavit and other documentary evidence.

Appellant Russ Calhoun was a full-time college professor at OCCC, who had worked for the college for ten years. Written policies of the college regarding "contract renewal" state that "employees shall be notified no later than April 1 of each fiscal year regarding *continued employment.*" (Emphasis added). Under the policies and procedures of the college, on March 28, 1989, the college made a written offer to renew appellant's contract for the 1989–90 college year. Appellant was obligated to respond to the offer on or before April 7, 1989. On April 3, 1989, appellant responded, in writing, indicating his acceptance. Following his acceptance, he was sent follow-up correspondence setting forth his salary and benefits for the contract period. This offer and acceptance scenario is the standard manner and procedure by which employees are ensured employment for the subsequent school year.

The offer letter reserved until June 9, 1989, the right to modify the employment contract by addition of specific performance objectives, which were to be developed by appellant and his immediate supervisor. The letter further stated that the

---

**1.** Subsequent to appellant's termination, a committee of the faculty association convened to consider whether appellant was afforded the required due process and procedural protections, as understood by the faculty committee, with regard to his termination. This committee was convened under the auspices of the faculty association, not the college, and had no responsibility or authority for considering the merits of appellant's termination. It was not officially recognized by the college and was not empowered to make any official determination regarding appellant's termination. As such, the com-

mittee could not have provided post-termination process, in the constitutional sense.

The district court, initially, reached the erroneous conclusion that this body had afforded appellant constitutionally adequate post-termination process. Upon motion for relief from judgment, appellees conceded this fact and the district court implicitly acknowledged its error. *See* note 2, *infra.*

**2.** Presumably, the district court conceded Appellant Calhoun's contention that the court had erred regarding the "post-termination hearing."

employment contract would be finalized upon completion of salary details. As of June 9, 1989, the addition of performance objectives had neither been suggested nor discussed. Without any proposal, or even suggestion of performance objectives, appellant's salary and compensation details were completed and communicated to him in writing.

In late June, subsequent to finalization of appellant's employment contract, appellant's supervisor informed Appellee Gaines (Executive Vice–President of OCCC) of complaints she had regarding appellant's performance and her reservations regarding renewal of appellant's contract. Appellant met with Appellee Gaines to discuss the complaints, some of which were resolved. Following the meeting, Appellee Gaines developed a list of ten (10) performance objectives, which Gaines intended to modify and become part of appellant's employment contract. On July 14, 1989, Appellee Gaines informed Appellant Calhoun of the performance objectives, in writing, and stated that Calhoun would have to sign a contract including these objectives or Gaines would take action to terminate appellant's employment contract.

On July 20, 1989, Appellant Calhoun met with Appellee Gaines to discuss the proposed performance objectives. During the meeting, Appellee Gaines withdrew the modified contract and thereafter did not offer appellant an opportunity to sign the agreement, either under protest, or as presented, without comment. On July 28, 1989, Appellant Calhoun received a certified letter from Appellee Gaines, which stated: "I consider your unwillingness to enter into that agreement as abandonment of your position. Please turn in your keys and remove all belongings from your office by August 2, 1989." On August 2, 1989, Calhoun received further written correspondence from OCCC Human Resources confirming his termination. Neither communication informed Appellant Calhoun of his right to a due process hearing, as provided for in the written policies of the college.

Appellant notified appellees that the above described termination violated college policies and procedures guaranteeing him a due process hearing or hearings and requested a due process hearing. Appellee Walker informed appellant, through counsel, that he was "willing to conduct a hearing concerning this matter," but subsequently refused to schedule a hearing and indicated that he would not comply with the due process provisions for such hearings.

### II.

On May 14, 1990, the district court issued a summary judgment order in favor of appellees finding that appellant had a constitutionally cognizable property interest in his legitimate expectancy of employment for the 1989–90 college year, but that appellant was afforded adequate pretermination and post-termination procedures to meet the constitutional requirements of due process, and, finally, that, even if the process afforded was not constitutionally adequate, appellees were qualifiedly immune from liability. On May 24, 1990, appellant moved for relief of judgment on grounds that the court had misapprehended certain material facts—that, in fact, appellant was not granted, nor did he receive, a post-termination hearing. On March 26, 1990, the district court issued an order denying appellant's motion for relief, apparently on the sole ground that appellees were qualifiedly immune.

A public employee faced with termination is entitled to procedural due process if he or she can demonstrate that such termination implicates a property interest protected by the Due Process Clause of the Constitution. *Graham v. City of Okla. City,* 859 F.2d 142, 145–46 (10th Cir.1988). In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court explained that a public employee may acquire a constitutionally protected property right in continued employment. Such a property right derives from that employee's legitimate claim of entitlement to continued employment, which

arises from independent sources such as state laws, rules or understandings that secure benefits to employees. *Id.* at 577, 92 S.Ct. at 2709. This Court has previously noted that such independent sources may include: a state or federal statute; a municipal charter or ordinance; an express or implied contract; a written contract with tenure provisions; or a contract "implied" from policies and practices of a particular institution. *Carnes v. Parker,* 922 F.2d 1506, 1509 (10th Cir.1991) (citations omitted).

■] Whether appellant has a sufficient property interest in his employment is a matter of state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Archer v. Sanchez,* 933 F.2d 1526, 1529 (10th Cir.1991). Our initial query here is whether the terms of appellant's employment, as created by contract, statute or policy manual, create a sufficient expectancy of continued employment to give rise to a property interest entitled to constitutional protection. *Graham v. City of Okla. City,* 859 F.2d 142, 146 (10th Cir. 1988).

■] The district court found that, in light of (1) the written policies, practices and procedures, under which employees were routinely offered and accepted employment contracts, (2) the fact that appellant's actions conformed to these policies, practices and procedures, and (3) the fact that substantial time passed before appellant was informed that his employment was in jeopardy, appellant had a legitimate expectancy of employment for the 1989–90 college year, which was entitled to constitutional protection. We agree.

3. The district court, in its March 26, 1990, Order, stated that the test to be applied was "whether a reasonable official would have known that an OCCC employee without tenure and [1] *without a contract for the 1989–90 college year,* and [2] who had participated in several meetings with the executive vice-president to discuss *whether he would be re-employed for the 1989–90 college year,* was entitled to constitutional protection of re-employment for that year."

Accordingly, we AFFIRM that part of the district court's opinion which held that Appellant Calhoun possessed a constitutionally cognizable property interest in his employment for the 1989–90 college year.

■] Merely establishing appellant possessed a constitutionally cognizable property interest does not end our inquiry. Appellees would still be shielded from suit if they demonstrate that the alleged conduct, which extinguished appellant's property right, did not violate clearly established law that a reasonable person would have known. *Bee v. Greaves,* 910 F.2d 686, 687 (10th Cir.1990) (citations omitted). While the unlawfulness of the conduct in question must be apparent under the preexisting law, " '[t]he particular action in question ... need not have previously been held unlawful. Nor must there even be a strict factual correspondence between the cases establishing the law and the case at hand.' " *Id.* (citing *Eastwood v. Department of Corrections,* 846 F.2d 627, 630 (10th Cir.1988)).

■] In deciding whether appellees' conduct violated clearly established law, we must determine the degree of factual correspondence required between the case at bar and the cases establishing the law. *Garcia v. Miera,* 817 F.2d 650, 657 (10th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). The district court's analysis erred by requiring too strict a factual correspondence—a standard previously rejected by this Court. *Id.; see also Bee v. Greaves,* 910 F.2d at 687 n. 2. The district court further erred in adopting appellees' version of disputed facts in making its inquiry, rather than taking the facts in the light most favorable to appellant.[3]

*Calhoun v. Gaines and Walker,* No. Civ. 89–1562–P (W.D.Okla. Mar. 26, 1991) (Emphasis added). The above enumerated facts, among others, relied upon by the district court and critical to its determination were clearly controverted by the appellant. In resting its decision upon these controverted facts, which conformed to appellees' not appellant's version, the district court failed to correctly apply the standard for summary judgment.

■] The standard adopted by this Court requires that there be some, but not necessarily precise, factual correspondence between previous cases and the case at bar. *Garcia,* 817 F.2d at 657. In essence, this standard requires officials to know well developed legal principles and to relate and apply them to analogous factual situations. *Id.* (citing *People of Three Mile Island v. Nuclear Regulatory Comm'n,* 747 F.2d 139).[4]

■ We believe, relative to this case, that it is well established that: a college professor, even in an employment setting that does not have a formal system for tenure, may, through contract, agreements and/or policy manuals and procedures, attain a constitutionally cognizant property right in an expectation of future employment, of which he may not be deprived without constitutionally adequate pretermination and post-termination proceedings. *See generally Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Perry v. Sinder-*

*mann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ In this case, appellant was offered and accepted an employment contract for the 1989–90 college year as provided for by the established college policies and procedures. The term of appellant's contract and the elements of compensation had been fixed. Such was the routine manner through which faculty members were guaranteed employment for the upcoming college year.[5] Substantial time passed before appellant was given any indication that his employment was in jeopardy. As previously noted, we agree with the district court that, at this time, appellant's property right in his expected employment for the 1989–90 college year had ripened. We further hold that, by applying well established legal principles to appellant's circumstances, a reasonable official would have known the same.

---

**4.** In *Miera,* this Court took note of the differing standards applied by the various Circuits and explicitly elected to follow the less rigorous standard used by the Third Circuit. *Garcia v. Miera,* 817 F.2d at 657. Adherence to this standard was recently noted by this Court in *Bee v. Greaves,* 910 F.2d 686, 687 n. 2 (10th Cir.1990).

The muddling of the water in this area, however, is not limited to the disparate views represented by the various Circuits. Analysis of the Supreme Court's own pronouncements on this issue confesses similar confusion.

Despite the issue's importance, and despite more than two dozen decisions, the Supreme Court has been unable to create a stable body of immunity law. For example, during the 1980s alone, litigants were forced to deal with at least three different formulations of the qualified immunity standard.[ ] ...

The instability in immunity doctrine has not resulted from new historical insights casting doubt on previous beliefs about the intent of the enacting Congress.... Instead, this instability has resulted from inconsistent views of the Court's interpretive function.[ ] David Achtenberg, *Immunity Under 42 U.S.C. § 1983: Interpretive Approach and the Search for the Legislative Will,* 86 Nw. U.L.Rev. 497, 498–99 (1992). One commentator recently suggested that the courts reconsider their approach to § 1983 immunity analysis. *See id.* Perhaps it is time for a fresh look at this area of the law.

**5.** The district court commented that the "college's written policy provided that properly executed contracts of employment were required of all professional employees at OCCC, in order to pay for professional services rendered" and that appellant had not executed a contract for the 1989–90 college year. *Calhoun v. Gaines and Walker,* No. Civ. 89–1562–P at 9 (W.D.Okla. May 14, 1999).

To the degree that the district court attached significance to the fact that appellant had not signed a contract, that fact is inapposite. The text of the policy requiring written contracts does not state that an executed contract is a condition of having a binding employment contract between the college and any of its professional employees. Rather, it merely states that an executed contract must be in hand before such an employee may be paid. *See* Policy No. 223 (Feb. 21, 1983) ("All professional employees shall be notified no later than April 1 of each fiscal year regarding continued employment. A properly executed contract *shall be required in order to pay* for all professional services rendered by personnel of the college....") (emphasis added).

Indeed, it has been the law of Oklahoma for some time that parties can have a binding contract, even though there is a yet unfulfilled agreement that such contract is to be reduced to writing. *See East Central Okla. Elec. Co-op, Inc. v. O.G. & E. Co.,* 505 P.2d 1324, 1328 (Okla.1973); *Western Contracting Corp. v. Sooner Const. Co.,* 256 F.Supp. 163 (W.D.Okla.1966).

**1476**

## III.

█ Similarly, we believe that a reasonable official would have known that the process afforded, as averred by appellant, was constitutionally inadequate. Since *Roth*, it has been clear that a property interest in continued employment may not be terminated without a constitutionally adequate hearing. 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Additionally, *Loudermill* established that some form of pretermination hearing, plus a full-blown adversarial post-termination hearing (unless such was included as part of the pretermination proceedings) are required. 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

### A. *Pretermination Process*

█ The district court initially found that appellant had received constitutionally adequate pretermination and post-termination procedures. The district court correctly noted that such process need not be elaborate but must, at a minimum, provide the employee with notice of the charges or reasons for his discharge, an explanation of the evidence against him and an opportunity to present his side of the story. *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495. Regarding the pretermination procedures, the district court found that the meetings participated in between appellant and Appellee Gaines afforded adequate pretermination process because appellant was put on notice that Appellee Gaines "was concerned

6. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546–47, 105 S.Ct. 1487, 1495–96 & 84 L.Ed.2d 494 (1985), makes it clear that, under appellant's version of the facts, the "meetings" between Calhoun and Gaines did not provide constitutionally adequate pretermination process. The Court, in *Loudermill*, instructed that, at a minimum, the pretermination proceeding must provide notice of the specific charges, an explanation of the employer's evidence and an opportunity for the employee to present his side of the story. The Court further stated that the pretermination proceeding should provide an initial check against an erroneous decision to terminate an employee—that is, it should be an initial determination of whether reasonable grounds exist to support a decision to discharge the employee. *Id.* As stated in the text of this opinion, we believe adequate notice must in-

with [his] conduct ... [and] given an adequate opportunity to explain his side of the story." We disagree with the district court's conclusion.

█ We believe implicit in the notice and opportunity to be heard elements is the requirement that the employee be made aware that his employment is in jeopardy of termination. Under the facts pled by appellant, he was never advised that such meetings were for the purpose of considering a termination decision, and when he asked the nature of the proceedings, Appellee Gaines became angry and left the meeting. Prior to Gaines' exit, it would have been reasonable to infer that such meetings were for the purpose of discussing modifications to appellant's employment contract through the addition of performance objectives, rather than a proceeding to discuss the appropriateness of a termination decision.[6]

Considering the factual record in the light most favorable to appellant, we cannot conclude that appellant was provided constitutionally adequate pretermination process. Accordingly, we REVERSE that portion of the district court's judgment that found appellant received a constitutionally adequate pretermination hearing.

### B. *Post-termination Process*

*Loudermill* also established that, in cases where the pretermination is less elab-

form the employee that his employment is in jeopardy. This conclusion is buttressed by the Court's instruction that the pretermination hearing is to function as a check against an erroneous termination decision. In this case, appellees maintained throughout the proceedings in front of the district court that appellant's employment had not been terminated but appellant had been deemed to have "resigned" as a result of his failure to sign the revised employment agreement. In this light, it is reasonable to infer that the meetings in question were for the purpose of discussing contract revisions, and the rationale for such revisions, rather than to consider the appropriateness of a decision to terminate appellant's employment. Accordingly, adequate pretermination process was not provided.

orate, a full-blown, adversarial post-termination hearing, held at a meaningful time, is necessary to determine the ultimate propriety of the discharge. In this case, appellant never received a post-termination hearing.[7] Accordingly, we hold that appellant did not receive constitutionally adequate post-termination process.

## IV.

Ultimately, the district court held that appellees were qualifiedly immune because a reasonable official would not have "known that an OCCC employee without tenure and *without a contract* for 1989–90 college year, and who participated in several meetings with the executive vice-president of OCCC to discuss *whether he would be reemployed* for the 1989–90 college year, was entitled to *constitutional protection of re-employment* for that year." *Calhoun v. Gaines and Walker*, No. Civ. 89–1562–P at 3 (W.D.Okla. Mar. 26, 1991) (Emphasis added). We believe the district court misstated the appropriate test.

As the above discussion demonstrates, the district court's inquiry relied upon appellee's version of the facts, which were controverted by appellant. Additionally, we believe the district court's test formulates the wrong inquiry. The appropriate test would first inquire whether a reasonable official would know that, under Oklahoma law and the policies and procedures of OCCC, an employee (1) who had been offered and accepted employment for the upcoming college year in accordance with procedures regularly used to guarantee such employment, and (2) who had the term of the contract and elements of compensation fixed in writing, and (3) who, after all deadlines established by OCCC's policies and procedures had passed, had not been informed that the college wished to add performance objectives to his contract and had attained a constitutionally cognizable

property interest in his expectation of continued employment. We believe that a reasonable public official would have known that a protected property interest had accrued. At this point, the inquiry turns to whether a reasonable official would know that the employee's property interest could not be extinguished without constitutionally adequate due process and that a series of non-adversarial meetings, which did not put the employee on notice that his job was in jeopardy of termination, did not amount to constitutionally adequate due process. We further believe that a reasonable official would have known that the process afforded appellant in this case was not constitutionally adequate.

## CONCLUSION

For the aforementioned reasons, this Court holds that the district court erroneously entered summary judgment finding appellees to be qualifiedly immune. Accordingly, we AFFIRM that part of the district court's judgment finding that appellant had a constitutionally cognizable property interest and REVERSE those portions of the district court's judgment finding that appellant had received constitutionally adequate process and finding appellees to be qualifiedly immune. This matter is REMANDED to the district court for further proceedings consistent with this opinion.

---

7. *See* notes 1 & 2, *supra.*