986 F.2d 1429
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Sara STUMP; Andrew M. Ocrant, Plaintiffs-Appellees,
v.
Daryl G. GATES; Diane J. Sexton, Defendants-Appellants,
and
Sueann Ocrant; City of Greenwood Village, a municipality;
Arapahoe Board of County Commissioners, Defendants.
 No. 92-1134.
 United States Court of Appeals, Tenth Circuit.
 Feb. 11, 1993.
 
 Before LOGAN and JOHN P. MOORE, Circuit Judges, and LUNGSTRUM,* District Judge.
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P.34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendants-appellants Daryl G. Gates and Diane J. Sexton appeal from the district court's order denying them qualified immunity. Gates and Sexton were, respectively, chief of police and detective for the City of Greenwood Village during the time pertinent to this suit. On May 20, 1984, Lawrence Ocrant was found shot to death in his Greenwood Village home. After an investigation, the police and county coroner reported the death as a suicide. However, allegations of impropriety prompted a grand jury investigation of the matter. On June 14, 1990, a single paragraph of the grand jury's report was made public, disclosing the conclusion that Ocrant's death was a homicide.
 
 
 3
 Plaintiffs, Ocrant's children, filed this lawsuit alleging in part a deliberate failure to follow certain procedures during the investigation into Ocrant's death. This included failure to perform an autopsy, destruction of evidence, and cremation of Ocrant's body contrary to his religious beliefs. Their complaint asserted constitutional claims for interference with their right of access to the courts and conspiracy in addition to several pendent state claims.
 
 
 4
 The district court dismissed some claims, upheld others, and denied defendants' motion to dismiss on the basis of qualified immunity. Plaintiffs then amended their complaint and, following more motions to dismiss, the district court entered an order specifically reaffirming its earlier ruling denying qualified immunity, stating that the defendants raised no argument that was not previously addressed. Gates and Sexton filed a timely notice of appeal. The district court's collateral order on this issue is appealable as a final judgment under 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 528 (1985).
 
 
 5
 Initially, we note the qualified immunity defense was raised in motions to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). This posture limits our review in two ways. First, in reviewing Rule 12(b)(6) determinations by the district court, we must accept all factual allegations in the complaint as true. See Dababneh v. FDIC, 971 F.2d 428, 431 (10th Cir.1992). The record as yet contains no evidence, and we express no view regarding plaintiffs' ability to prove their allegations should this case proceed further in the district court. Second, our review is limited to the district court's denial of qualified immunity in connection with plaintiffs' right of access and conspiracy claims. We review this determination de novo. Patrick v. Miller, 953 F.2d 1240, 1243 (10th Cir.1992).
 
 
 6
 The thrust of the amended complaint is that Gates and Sexton acted in concert to cover up the cause of Ocrant's death by deliberately destroying the evidence that would support a wrongful death action against the alleged murderer of their father, and that this cover up resulted in a violation of plaintiffs' constitutional right of access to the courts. The specificity of plaintiffs' factual allegations are important to our determination on the issue of qualified immunity. Here, plaintiffs have stated with particularity the conduct they allege violated their right of access to the courts. The district court, in its order denying motions following the second amended complaint, noted: "I emphasize that it is Gates' and Sexton's alleged acts of destroying evidence and precluding an adequate investigation into Lawrence Ocrant's death that form the basis of [the court's initial ruling denying Gates and Sexton qualified immunity]." Appellant's App., doc. 11 at 2-3.
 
 
 7
 In reviewing the grant or denial of qualified immunity, this court must "determine whether defendants violated 'clearly established statutory or constitutional rights of which a reasonable person would have known' at the time the challenged conduct occurred." Patrick, 953 F.2d at 1243 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The test is one of objective reasonableness, in light of the law at the time of the alleged violation. Jantz v. Muci, 976 F.2d 623, 627 (10th Cir.1992). The burden is on the plaintiffs to show that the law was clearly established at the time of the alleged violation. Patrick, 953 F.2d at 1243; Dixon v. Richer, 922 F.2d 1456, 1460 (10th Cir.1991). "For plaintiffs to defeat a claim of qualified immunity, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Snell v. Tunnell, 920 F.2d 673, 696 (10th Cir.1990) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)), cert. denied, 111 S.Ct. 1622 (1991).
 
 
 8
 In order for a right to have been clearly established, this court requires "some, but not necessarily precise, factual correspondence" between cases predating the alleged violation and the facts of the case in question. Calhoun v. Gaines, No. 91-6152, 1992 WL 387385, at * 4 (10th Cir. Dec. 30, 1992). "In essence, this standard requires officials to know well developed legal principles and to relate and apply them to analogous factual situations." Id. The parties naturally characterize the qualified immunity issue differently. We believe, however, that the appropriate statement of that issue in the context of the allegations of this complaint is whether a reasonable officer would have known at the time of Ocrant's death that a deliberate failure to investigate and quick destruction of evidence that might have proved homicide was a violation of the decedent's children's right of access to the courts.
 
 
 9
 The right of access to the courts has developed primarily in cases where prison regulations or restrictions operated to deprive inmates of their constitutional right to seek redress from the judicial system. See, e.g., Bounds v. Smith, 430 U.S. 817 (1977) (requiring prisons to provide adequate law libraries or legal assistance); Johnson v. Avery, 393 U.S. 483 (1969) (striking prison regulation prohibiting inmates from helping each other with legal filings). Nonetheless, this right has been recognized in a variety of other contexts where deliberate state conduct barred plaintiffs from meaningful access to judicial review of their claims. See, e.g., Boddie v. Connecticut, 401 U.S. 371, 383 (1971) (prohibiting state's refusal to allow indigents to file for divorce without payment of costs and fees); McKay v. Hammock, 730 F.2d 1367, 1375 (10th Cir.1984) (remanding for consideration of right of access claim where state officer threatened retaliation if civil rights claim filed); Shaw v. Neece, 727 F.2d 947, 949 (10th Cir.) (recognizing right of access claim in nonprison context, but dismissing because facts did not support claim), cert. denied, 466 U.S. 976 (1984); Silver v. Cormier, 529 F.2d 161, 163 (10th Cir.1976) (recognizing right of access claim arising from threat to withhold monies if suit filed); Singer v. Wadman, 595 F.Supp. 188, 301-02 (D.Utah 1982) (noting cover-up of shooting death could amount to violation of right of access if facts showed "deliberation" or "severity"), aff'd, 745 F.2d 606 (10th Cir.1984), cert. denied, 470 U.S. 1028 (1985).
 
 
 10
 One case plaintiffs cite to support their argument that the law was clearly established at the time of Ocrant's death closely resembles the facts here: Ryland v. Shapiro, 708 F.2d 967 (5th Cir.1983) (right of access for wrongful death action violated when district attorney covered up murder committed by prosecutor). This court has stated that a single case from another circuit is not sufficient to clearly establish the law in this circuit. See Woodward v. City of Worland, 977 F.2d 1392, 1397 (10th Cir.1992); Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992). Nevertheless, we do not think Ryland is an aberration. Shortly after the district court decided the case before us the Seventh Circuit in Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir.1984), held that a charge of conspiracy between police officers to cover up the killing of a fleeing suspect stated a cause of action under the civil rights laws: "a conspiracy to cover up a killing, thereby obstructing legitimate efforts to vindicate the killing through judicial redress, interferes with the due process right of access to courts, which is protected by [42 U.S.C.] Sections 1985(2) and 1985(3)." Id. at 1261 (footnote omitted). We emphasize that all that is before us are the allegations of the complaint, alleging deliberate action and conspiracy, which we must take as true. We believe that any reasonable officer would have known that if the conduct occurred as alleged by plaintiffs in this case, it would violate the constitutional rights of the decedent's children. Cf. DeLoach v. Bevers, 922 F.2d 618, 621-23 (10th Cir.1990) (denying qualified immunity to police officer on § 1983 claims in light of deliberate conduct amounting to coverup), cert. denied, 112 S.Ct. 65 (1991). Further, the facts set out in the complaint are specific enough--create enough of an inference of wrongdoing--to warrant denial of the motion for dismissal on the pleadings.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3