**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TRAVIS L. SUTHERLAND,

      Plaintiff-Appellant,

v.

TOOELE CITY CORPORATION; RON
KIRBY, individually and as Chief of
Police; C. H. BROWN; SUE CASIAS;
LAWRENCE SILCOX; SHANNON
WALTERS; KYLE PITTS, individually
and as members of the Employee Appeals
Board; CHARLIE ROBERTS,
individually and as Mayor; C. H.
BROWN; LAWRENCE SILCOX;
COLLEEN JOHNSON; MICHAEL
JOHNSON; EARL COLE, individually
and as members of the Tooele City
Council,

      Defendants-Appellees.

No. 02-4199
(D.C. No. 2:00 CV-128-ST)
(Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In a 15-page complaint to which were attached 12 "exhibits" totaling 32 pages, Travis L. Sutherland ("plaintiff") filed suit against the Tooele (Utah) City Corporation ("Tooele" or "City") and 12 of its officials, the latter in their individual capacity as well as in their official capacity.[1] The basis for the action was plaintiff's claim that he was discharged by Tooele on July 1, 1999, from his employment as a permanent police officer for Tooele, where he had served for some five years, and that in terminating his employment with Tooele, the defendants violated plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution. The first cause of action was based on the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

In a second and last cause of action, the plaintiff incorporated therein by reference all of the allegations set forth in his first cause of action and went on to further allege that on November 17, 1999, the Tooele City Council voted to uphold the termination of his employment and that immediately thereafter the defendants notified the press and others that plaintiff was discharged for reasons that "adversely impinged his good name and reputation in the community." As a result, the plaintiff alleged that he was "deprived of his good name and reputation in the community and deprived of his liberty interest in

---

[1]Ron Kirby was sued individually and as Chief of Police; the five members of the Employees Appeal Board were sued individually and as members of the Board; Charlie Roberts was sued individually and as the Mayor of Tooele; and the five members of the Tooele City Council were sued individually and as members of the Council.

violation of law," for which he sought damages and reinstatement.

The defendants through their attorney filed a motion to dismiss on the grounds that "the individual defendants are protected by qualified immunity and that the plaintiff has failed to state a claim upon which relief may be granted." The district court denied the defendants' motion to dismiss and granted plaintiff's motion to amend his complaint.

An amended complaint was thereafter filed. The amended complaint paralleled the original complaint, and contained the same two causes of action. The defendants in due time filed an answer thereto. After discovery, the defendants filed a motion for summary judgment. The plaintiff later filed a cross-motion for summary judgment. After hearing, the district court granted defendants' motion for summary judgment and denied plaintiff's cross-motion for summary judgment in a 30-page memorandum opinion and order. Plaintiff appeals.

The following is a not-so-brief chronology of the background facts which will place the present controversy in focus:

PRE-TERMINATION

Plaintiff was hired by Tooele as a permanent full time police office on June 28, 1994. Under his contract with Tooele, plaintiff's employment could not be terminated without cause. Beginning in April 1995, and continuing until his termination on July 1, 1999, plaintiff had some 12 complaints filed against him by either citizens of Tooele or by fellow officers on the Tooele Police Department. As a result of these several

complaints, plaintiff received a verbal reprimand for offensive behavior and rudeness occurring on April 5, 1995, and for using foul language on September 15, 1995. On March 12, 1996, plaintiff received a written reprimand for "disposing" of beer which had been confiscated during an arrest, the beer being found in plaintiff's refrigerator instead of in an evidence locker. In October, 1996, a complaint was made against plaintiff that he had improperly questioned a female juvenile at a Tooele school. On April 4, 1997, he received another reprimand for offensive demeanor and rudeness. On October 20, 1997, plaintiff received a verbal reprimand for accidentally discharging a firearm in a house during the course of a burglary investigation. On November 4, 1997, an internal complaint was filed against the plaintiff for excessive use of force when he punched a suspect in the face and for failing to submit a report thereof. In November 1997, plaintiff received a written reprimand and was suspended without pay for two days when he failed to properly dispose of a marijuana cigarette and again failed to file a report. In January, 1998, plaintiff received another written reprimand for using excessive force when he allegedly placed pliers on the fingers of several 15-year old boys and told them that he would squeeze the pliers harder if they didn't tell the truth. In August, 1998, plaintiff received a written reprimand for speeding in a police car. In November, 1998, plaintiff allegedly filed a false report concerning verbal abuse and mishandling of evidence, which were not "sustained." In addition thereto and after certain "corrective measures" had been ordered, plaintiff's personnel file showed four employment evaluations noting his

performance as being "below average," and that he was denied a "merit raise" in January, 1998.

On May 19, 1999, when plaintiff was five months into a six-month "corrective action plan," another complaint was filed against plaintiff by one Lavetta Sandoval, a resident of Tooele. The complaint was that plaintiff had engaged in offensive and improper behavior toward Sandoval's 15-year old daughter. This complaint prompted the Chief of the Tooele Police Department ("Chief Kirby") to begin an internal affairs investigation into Sandoval's charges. Interviews of Sandoval, her daughter, and one of the daughter's friends, were videotaped and later transcribed. Plaintiff was interviewed by Chief Kirby on two occasions concerning this, and other matters, which interviews were videotaped and later transcribed. In the first of these two interviews, on May 15, 1999, Chief Kirby informed plaintiff of Sandoval's complaint that plaintiff had an improper discussion concerning sex with her daughter and that he had taken the daughter, and her friend, to an adult novelty store to have the daughter's navel pierced and that he had provided them with some prescription medication. Plaintiff had been previously cautioned that, if he lied during the internal affairs investigation, he would be fired.

During the first of the two interviews, plaintiff admitted that he had engaged in conversation of a sexual nature with Mrs. Sandoval when her daughter was present and acknowledged that he had taken the daughter and her young friend to a novelty store so that she could get her navel pierced for her sixteenth birthday. In the same interview,

plaintiff told Chief Kirby that he did not talk to the Sandoval girl about oral sex during the drive to the novelty store. Plaintiff also stated he gave the girl some medicine, but was not sure "what type of prescription it was, matter of fact it was Ibuprofen 800's."

The second interview occurred on June 12, 1999. In that interview he admitted to engaging in sexual conversation with the young girls he had taken to the novelty store where the daughter had her navel pierced, although the conversation occurred, according to the plaintiff, in a manner in which he told the girls they should not engage in oral sex. As for the medication conversation in the first interview, plaintiff in the second interview said that the medication was not prescription, but over-the-counter Ibuprofen.

On June 16, 1999, plaintiff was notified in two letters that Chief Kirby was charging him with (1) a historical pattern of employee misconduct and poor performance; (2) a violation of the Law Enforcement Code of Ethics; and (3) lying to a supervisor during an internal affairs investigation. These letters advised him of the specific allegations being considered against him as well as the underlying evidence supporting the charges. These same letters informed the plaintiff that he was being placed on paid suspension pending possible disciplinary action, and that a pre-termination decision hearing would be held on June 30, 1999. He was also told that he was entitled to provide Chief Kirby with a written response to the charges and was entitled to review the internal affairs file relating to the allegations made against him. Plaintiff acknowledged receipt of these letters and admits to being allowed to go to Chief Kirby's office to review the

internal affairs files.  To all of this, plaintiff's response to the numerous allegations was merely, "I deny all charges listed against me."

On June 30, 1999, plaintiff was given a so-called pre-decision "*Loudermill*" hearing.  At that hearing, the charges were explained to the plaintiff and he said he understood them.  When asked if he wished to respond to those charges, he repeatedly stated he had "no comment."[2]

Following the "*Loudermill*" hearing, a further hearing was set for July 1, 1999.  Plaintiff did not attend that hearing.  Accordingly, Chief Kirby sent plaintiff a letter, dated July 1, 1999, again informing him of the charges made against him and that his employment with Tooele as a city policeman was terminated.  Plaintiff was reminded of his appeal rights in the same letter.

---

[2]As concerns the amount of due process constitutionally required in a pre-termination hearing, in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546 (1985), the Supreme Court spoke as follows:

> The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.  The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.  (Citations omitted.)

POST-TERMINATION

Plaintiff initiated the appeals process by completing the appeal form given him by Chief Kirby and submitting it to the Tooele City Police Department.

As permitted by the appeals procedure, plaintiff first appealed to the Tooele City mayor and was given a hearing before Tooele City Mayor, Charlie Roberts. At that hearing, plaintiff was represented by an attorney, one Steven Cook, who represents him in this appeal.[3] After hearing, the mayor upheld plaintiff's termination from the Tooele Police Department.

Plaintiff thereafter, through counsel, appealed the mayor's determination to the Tooele City Employees Grievance Appeal Board. A hearing was set for September 14, 1999. On August 20, 1999, the Tooele City Attorney, Roger Baker, sent a letter to the members of the Appeal Board, suggesting proper procedures to be followed at the appeals hearing. A copy of that letter was sent to plaintiff's attorney. In the body of that letter, Baker advised plaintiff's attorney of plaintiff's right to present evidence at the hearing and invited him to make procedural suggestions regarding the upcoming hearing.

On August 26, 1999, plaintiff's attorney objected to this letter on the grounds that Baker had engaged in *ex parte* communication with the Appeals Board members, and by a letter dated August 25, 1999, plaintiff's attorney requested from Baker the issuance of

---

[3]Counsel spoke at great length during the hearing on his client's behalf. At the conclusion of counsel's statements, the Mayor asked plaintiff if he wanted to add anything, to which plaintiff responded, "No, Steven has got it."

ten subpoenas to compel the attendance of witnesses at the hearing. Baker responded to that request, by letter, on August 27, 1999, stating that plaintiff was entitled to call any witness he wanted to, but that the City could not issue subpoenas on behalf of the plaintiff. The City apparently did not have the power to issue subpoenas in an administrative proceeding of this nature.

About one week before the hearing, Baker delivered an unredacted copy of the evidence binder that he was to present at the hearing, both to plaintiff's attorney and the members of the Board.

The hearing before the Appeals Board took place on September 14, 1999, Cook appearing as plaintiff's attorney, with the City calling the Mayor and Chief Kirby as witnesses. Both were cross-examined by Cook. At the close of the City's case, the plaintiff called no witnesses nor did he, himself, testify. Plaintiff's attorney had previously objected to one Sue Casias serving as a member of the Board because she was, at the time, working as a secretary in the City Attorney's office. She had been elected by the Tooele City Employment body, to serve as a board member. At the conclusion of the hearing, the Board voted unanimously to uphold plaintiff's termination as a police officer for the City.

On October 22, 1999, the Chairman of the Tooele City Council sent a letter to plaintiff's attorney, informing him of plaintiff's right to appeal the decision of the Appeal Board to the Tooele City Council and inviting plaintiff to participate in such a hearing. In

this letter, the Chairman stated that it could not issue subpoenas on plaintiff's behalf, but that plaintiff could present any witnesses he wished. Plaintiff did not respond to the Council's letter nor did he appear at the City Council meeting. In that setting, the Council upheld plaintiff's termination.

At the outset of our discussion, it should be noted that we are not here reviewing the merits of plaintiff's discharge from the Tooele Police Department. Our basic concern is whether the state and local rules and regulations governing discharge of a permanent employee of the Tooele Police Department provided the plaintiff with his Fourteenth Amendment rights to "due process." In this regard, in *Pitts v. Board of Educ.,* 869 F.2d 555, 557 (10th Cir. 1989), we spoke as follows:

> He [Pitts] also spends a great deal of time arguing that the grounds for termination which the board listed are unsupportable and stigmatizing. Pitts misunderstands the nature of his federal claim, which is an assertion that he was denied due process. Federal courts do not sit to second guess state decisions on the merits of a discharge decision, but only to ensure that employees are provided due process when the decision is made.

Stated somewhat differently, this is not an action for breach of contract. We are not here concerned with whether plaintiff's termination procedures complied with local law. Rather, it is an action brought in federal court seeking redress against state officials acting under the color of state law who, in so doing, allegedly deprived the plaintiff of rights guaranteed by the United States Constitution and laws passed pursuant thereto. Specifically, 42 U.S.C. § 1983 reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

In its memorandum and order granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment, the district court first held that the individual defendants were entitled to qualified immunity. In so doing, the district court cited *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) for the proposition that "[q]ualified immunity generally shields from liability for civil damages 'government officials performing discretionary functions . . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'." The district court then went on to hold, that based on the record before it, the plaintiff had been afforded procedural due process in both his pre-termination and post-termination hearings, and that the defendants, acting in their official capacity, were not liable to the plaintiff under 42 U.S.C. § 1983.

On appeal, plaintiff first challenges the district court's holding that the individual

defendants were entitled to qualified immunity. Further, as we understand it, the plaintiff does not challenge the district court's determination that plaintiff was afforded pre-termination "due process." However, in this regard, plaintiff does challenge, on a number of different grounds, the district court's finding that plaintiff's post-termination hearings satisfied the "due process" requirement of the Fourteenth Amendment.[4]

We are in accord with the district court's holding that the individual defendants were entitled to qualified immunity for the reasons given by the district court in its memorandum opinion and order. Also, we agree with the district court's finding that the post-termination hearings afforded plaintiff "due process," and that the defendants, acting in their official capacities, were not liable to the plaintiff under 42 U.S.C. § 1983. Indeed, it would seem to us that plaintiff actually received an abundance of "due process," from start to finish.

As stated, we are here concerned with plaintiff's "due process" rights under the Fourteenth Amendment, and we are not here concerned, for example, with an accused's rights in a criminal prosecution as set forth in the Sixth Amendment. The instant case involves administrative hearings, and is not a criminal trial. So, the particular issue in the

---

[4]Counsel asserts that the state and local rules and regulations regarding termination of a permanent employee violated his right of due process because he was denied his right to confront and cross-examine members of the Sandoval family and he was not afforded his right to subpoena witnesses on his own behalf. Also, counsel sought, unsuccessfully, to challenge the partiality of one member of the five person Appeals Board and complained about the adequacy of the findings on the part of the Chief of Police, the Mayor, the Appeals Board and the City Council.

present case is whether the plaintiff's due process rights in the post-termination proceedings, not the pre-termination proceedings, met the "due process" test of the Fourteenth Amendment. In other words, as we understand it, the parties agree that, as a permanent employee of the Tooele Police Department, plaintiff could not be terminated without first being afforded procedural "due process." Under state law, plaintiff clearly had a property right in his continued employment as a policeman for the City. (Plaintiff's claim in his complaint that the defendants violated his "liberty interest," as well as his property interest, was not pursued in the district court and is not an issue in this appeal.) The dispute here is the "level" of due process that the Fourteenth Amendment affords him.

Plaintiff argues that under *Calhoun v. Gaines*, 982 F.2d 1470, 1476-7, (10th Cir. 1992), he was entitled to a "full blown adversarial post-termination hearing." It is true that in *Calhoun* we used that language. However, in *Calhoun* we first determined that Calhoun, the plaintiff therein, had <u>not</u> received "due process" in the pre-termination hearings and it was in that context that we said that the plaintiff was then entitled to a "full blown" hearing in his post-termination proceedings. In the instant case the district court held that plaintiff had received "due process" in his pre-termination proceedings, a holding with which we are in complete accord, and which is <u>not</u> raised on appeal. In this regard, in *Benavidez v. City of Albuquerque,* 101 F.3d 620-627 (10th Cir. 1996), we spoke as follows:

- 13 -

When the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important. Such a post-termination hearing represents the only meaningful opportunity the employee has to challenge the employer's action, and requiring a dismissed employee to prove in this context that he was terminated without just cause may increase the risk of an erroneous deprivation. It is often difficult to prove a negative, and where the pre-termination process has been minimal, the employee's fate may depend entirely upon the post-termination hearing. *Cf. Lavine,* 424 U.S. at 585, 96 S.Ct. at 1016 (recognizing that "[w]here the burden of proof lies on a given issue is, of course, rarely without consequence and frequently may be dispositive"); *Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) (acknowledging that "where the burden of proof lies may be decisive of the outcome").

So, the question presented on this particular matter is whether plaintiff was given "due process" in his post-termination hearing, wherein the district court held, *inter alia,* under the described circumstances, that plaintiff did have notice of the hearing, and of his right to respond, and, in fact, was given a chance to tell his side of the story (which he did, through counsel, at the hearing before the Mayor). We agree with the district court's assessment of the matter.

We think plaintiff's reliance on *McClure v. Independent Sch. Bd. No. 16,* 228 F.3d 1205 (10th Cir. 2000) is misplaced. In that case we did state that a termination of employment hearing includes the right to be represented by an attorney and the "right to cross-examine adverse witnesses." *Id.* at 1211. In that same opinion we also said that "[w]hile not necessary in every case, procedural due process often requires confrontation

- 14 -

and cross-examination of those whose word deprives them of a livelihood." *Id.* We deem the facts in the instant case, though similar in some respects, to be markedly different, in other respects, from those in *McClure*.[5] In this general connection, in *Rosewitz v. Latting,* 689 F.2d 175 (10th Cir. 1982) (*abrogated on other grounds by American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40 (1999)), we said that "[e]ssentially, procedural due process requires notice and an opportunity to be heard in a meaningful time and manner" and that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *See also West v. Grand County,* 967 F.2d 362, 369 (10th Cir. 1992)("Confrontation and cross-examination . . . are not rights individually applicable to all hearings.") (citing *Wolff v. McDonnell,* 418 U.S. 539, 567 (1974)).

---

[5]In *McClure*, the court stated, "Unlike the present case, the defendant in *Rosewitz* provided its employees with a five-step grievance procedure that offered several opportunities to present a defense . . . . We pointed out that, as a result, the risk of erroneous deprivation was not great." *McClure,* 228 F.3d at 1212, n. 6. Similarly, in this case plaintiff was offered several opportunities to present a defense.

The judgment is affirmed.[6]

ENTERED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge

---

[6]Counsel for the defendants also argues in this court that plaintiff's failure to attend the hearing before the City Council waives his right to appeal the City Council's decision to uphold his termination, citing *Pitts, supra.* The district court in its order did not consider "waiver," as such, based on plaintiff's failure to pursue to conclusion his right to appeal to the City Council and in view of our disposition of this appeal on other grounds, we decline to consider "waiver" as another ground for affirming the district court's resolution of this controversy. In this general connection, in *Pitts* we specifically rejected any suggestion that Pitts "must exhaust his claim before he has a federal cause of action," as did the district court in the present case.