Arthur TRUJILLO and Betty
Trujillo, Plaintiffs,

v.

Stephen SIMER, et al., Defendants.

No. 93–D–1787.

United States District Court,
D. Colorado.

July 25, 1996.

1218

David Lane, Denver, CO, for Plaintiffs.

Theodore S. Halaby, Robert M. Liechty, Halaby, McCrea & Cross, Denver, CO, William Pharo, Assistant U.S. Attorney, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

### I. INTRODUCTION

Plaintiffs, Arthur and Betty Trujillo, allege that the Defendants violated their Fourth Amendment rights during the execution of an *in rem* seizure warrant and the subsequent warrantless search of their real property. Plaintiffs bring this action against U.S. Customs agents, Stephen Simer, Traci Lembke and Curtis Lembke pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("*Bivens*"). Plaintiffs' constitutional claims against the remaining Defendants ("County Defendants") are brought pursuant to 42 U.S.C. § 1983. Plaintiffs also assert state law torts of trespass and outrageous conduct against the County Defendants and the United States.[1] Plaintiffs also seek equitable relief and request the Court to declare that their constitutional rights were violated.

The parties have filed cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. Additionally, Traci and Curtis Lembke have filed a motion to dismiss based on the expiration of the statute of limitations, and the United States has filed a motion to dismiss the state law claims contending the Court lacks jurisdiction because the Plaintiffs failed to file an administrative tort claim as required by 28 U.S.C. § 2675.[2]

### II. FACTS

On August 28, 1991, the United States filed a Verified Complaint for Forfeiture *In Rem*, seeking to forfeit real property owned by Arthur and Betty Trujillo in Conejos County,

---

1. The United States was substituted as the defendant on these claims for Stephen Simer, Traci Lembke and Curtis Lembke pursuant to 28 U.S.C. § 2679(d)(1).

2. The Plaintiffs concede that these claims should be dismissed against the United States because they failed to file an administrative claim as required by 28 U.S.C. § 2675(a). *Cizek v. United States,* 953 F.2d 1232 (10th Cir.1992). Similarly, Plaintiffs originally asserted a 14th Amendment claim, which they conceded in their briefs is legally deficient.

Colorado. The complaint contained an affidavit of Stephen Simer, a Special Agent employed by the U.S. Customs Service, which set forth probable cause for the issuance of an *in rem* arrest warrant. On August 28, 1991, United States Magistrate Judge Donald E. Abram issued an Order for Arrest of Property *In Rem* for the real property owned by Arthur and Betty Trujillo in Conejos County, Colorado, finding that the subject property was subject to forfeiture based on the complaint. The order decreed that a warrant for the arrest of the property be issued and authorized the U.S. Customs Service to arrest the property. The order also decreed that, "The United States Custom Service is directed to enter the Property and search it for the purpose of ascertaining the condition of the Property and inventorying the Property and the fixtures and contents thereof." Pursuant to this order, the Clerk of the Court issued an *In Rem* Warrant for Arrest of Property.

Agent Simer was the U.S. Customs agent in charge of executing the warrant to seize the Trujillo property. Traci and Curtis Lembke, also Special Agents employed by the U.S. Customs Service, were assigned to assist Agent Simer. Agent Simer also requested assistance from the Conejos and Rio Grande County Sheriffs because he believed additional law enforcement personnel were needed for security and efficiency, and because Mr. Trujillo knew Gerald Rivera, the Conejos County Sheriff.

Prior to executing the warrant to arrest the property, Agent Simer held a briefing attended by all the law enforcement personnel involved in the execution of the warrant. At this briefing, Agent Simer explained that they would be executing an *in rem* warrant to arrest the property, not a search warrant. Agent Simer further explained that the warrant authorized entry for the purpose of ascertaining the condition of the property and inventorying the property and contents thereof. That is, all the affidavits indicate that Agent Simer recognized a difference in scope between an *in rem* warrant and a traditional search warrant and that he communicated this distinction to the members of his law enforcement team.

On September 3, 1991, at approximately 12:30 p.m., the law enforcement officers arrived at the Trujillo property. The residence was entered and the agents conducted an initial security sweep to determine if anyone was present. This consisted of looking in areas that could contain a person which included the various rooms, closets and crawl spaces. No one was found on the property. During the security sweep, numerous firearms were observed on a gun rack located in the residence, and an assault rifle was found in plain view in a closet. For security reasons, the firearms were unloaded and placed in a central location under guard.

After the initial security sweep was completed, Khembar Yund, a deputy sheriff employed by the Rio Grande County Sheriff's Department, brought a search dog through the residence at the request of Agent Simer. The dog was trained to alert if it smelled people, explosives or illegal drugs. Although the dog alerted to the presence of illegal drugs in several places, no drugs were seized at that time. Prior to September 3, 1991, Agent Simer discussed the legality of bringing a drug detecting dog through the residence with an Assistant U.S. Attorney. The Assistant U.S. Attorney advised Agent Simer that it would not violate the Fourth Amendment to bring the dog onto the residence because the U.S. Supreme Court had ruled a dog sniff was not a search.

After the dog sweep, Traci Lembke videotaped the Trujillo property so that its condition and contents could be documented by the U.S. Customs Service. A video tape of the property was also taken by Joe Salvatore, an employee of EG & G Corporation. Pursuant to contract, EG & G independently documents the condition of seized property for the U.S. Customs Service.

Arthur Trujillo arrived at his property while Mr. Salvatore was making his video tape. Agent Simer and Sheriff Rivera brought Mr. Trujillo to a bedroom in his residence to explain the seizure process to him. During the course of their conversation, Agent Simer, Sheriff Rivera and Mr. Trujillo moved to another room because Mr. Salvatore needed to video tape the room they were occupying. During their conversation,

Agent Simer asked Mr. Trujillo if his property could be searched for drugs. Mr. Trujillo responded that his property could be searched, although he refused to sign a written consent to search form. Although there is some dispute as to exactly what Mr. Trujillo said during this conversation, during his deposition Mr. Trujillo admitted that he stated, "Go ahead and search, because you have already searched," or words to that effect. Therefore, for purposes of the Defendants' summary judgment motions, the Court must accept Mr. Trujillo's version of what he said as an undisputed fact. Mr. Trujillo based his belief that a search had already occurred on the fact that he saw his kitchen cabinets had been opened and because he heard noises in his crawl space. According to Mr. Trujillo, his total conversation with Agent Simer and Sheriff Rivera lasted one to two hours. Mr. Trujillo was not handcuffed or otherwise physically restrained, and there is no evidence that he was physically or verbally threatened or coerced by Simer or Rivera during this conversation.

Agent Simer then drove to the Conejos County Sheriff's Department to call the United States Attorney's office to obtain a legal opinion as to whether or not a full search of the property could be conducted based on Mr. Trujillo's oral statements. Agent Simer talked to an Assistant United States Attorney who advised him that the property could be searched based on the oral consent even though Mr. Trujillo refused to sign the written consent form. Agent Simer returned to the Trujillo property and advised the other law enforcement personnel that Mr. Trujillo had given oral consent to search the property, and that an Assistant U.S. Attorney advised him that they could therefore conduct a warrantless search.

Agent Simer and some of the law enforcement officers then searched the residence and seized contraband and other items for evidence. Mr. Trujillo was told he could leave or wait outside while the search was conducted. He waited outside on his porch for awhile, left and went to a restaurant, and later returned to his residence. There is no evidence that Mr. or Mrs. Trujillo objected to the search while it was being conducted.

Mr. Trujillo was subsequently indicted by a federal grand jury in the District of Colorado for drug violations. During the course of the criminal case he moved to suppress the drugs and other evidence seized from his residence. The Court granted Mr. Trujillo's motion finding that he had not voluntarily consented to the search, and that the manner in which the evidence was seized exceeded the authorization of the *in rem* seizure warrant.

## III. DISCUSSION

### A. Legal Framework

Summary judgment is appropriate only when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a movant has satisfied the burden imposed by Rule 56, all factual disputes and inferences must be drawn in favor of the nonmoving party. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980).

Although the federal and county defendants raise several issues in their respective motions for summary judgment, the thrust of their collective argument is directed at the affirmative defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore,* 906 F.2d 491 (10th Cir.1990). A plaintiff cannot defeat a defense of qualified immunity merely by alleging a violation of "extremely abstract rights." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized sense." *Id.* at 640, 107 S.Ct. at 3039. "[O]r-

dinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992); *see also Patrick v. Miller,* 953 F.2d 1240 (10th Cir.1992). The test is one of objective reasonableness, in light of the law at the time of the alleged violation. *Jantz v. Muci,* 976 F.2d 623, 627 (10th Cir. 1992).

■ The burden is on the plaintiffs to show that the law was clearly established at the time of the alleged violation. *Patrick,* 953 F.2d at 1243; *Dixon v. Richer,* 922 F.2d 1456, 1460 (10th Cir.1991). "For plaintiffs to defeat a claim of qualified immunity, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Snell v. Tunnell,* 920 F.2d 673, 696 (10th Cir.1990) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). In order for a right to have been clearly established, this court requires "some, but not necessarily precise, factual correspondence" between cases predating the alleged violation and the facts in question in this case. *Calhoun v. Gaines,* 982 F.2d 1470, 1475 (10th Cir.1992). "In essence, this standard requires officials to know well developed legal principles and to relate and apply them to analogous factual situations." *Id.* However, a single case from another circuit is not sufficient to clearly establish the law of this circuit. *Woodward v. City of Worland,* 977 F.2d 1392, 1397 (10th Cir.1992).

As noted above, in this instance Plaintiffs' Section 1983/*Bivens* claims are premised on the notion that the Defendants violated their Fourth Amendment rights by exceeding the scope of the *in rem* warrant and by mistak-

enly operating under the guise that they had obtained Plaintiffs' consent to expand their original search. In their motions for summary judgment, Defendants contend that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." More precisely, they argue that: (1) since they differentiated their original search and since there is little law on the parameters of an *in rem* warrant, they by definition could not have violated clearly established law; and (2) since Defendant Simmer actually received authorization from an Assistant United States Attorney to expand the search based on Plaintiff's purported consent, Defendants did not violate clearly established law in concluding that Plaintiff consented but rather made a mistake on a close call. For the reasons discussed below, I agree.

### B. *Constitutional Claims*

The First Claim for Relief alleges that the Defendants violated the Fourth Amendment by conducting a search of the Trujillo's property that exceeded the scope of the *in rem* seizure warrant, and by conducting a search without a search warrant or voluntary consent.[3] The Court grants the Defendants' motions for summary judgment because all of the Defendants are entitled to qualified immunity on this claim.

#### 1. *Scope of Warrant In Rem*

■ The Order For Arrest of Property *In Rem* stated, "The United States Custom Service is directed to enter the Property and search it for the purpose of ascertaining the condition of the Property and inventorying the Property and the fixtures and contents thereof ... " Plaintiffs claim that the Defendants exceeded the scope of this order by looking in closets, kitchen cabinets and crawl spaces, video-taping the interior of the property, and by using the drug sniffing dog.

3. Concerning the alleged seizure (i.e. arrest) of Plaintiff, the record clearly indicates that no seizure took place. Furthermore, even assuming, *arguendo,* that Plaintiff was detained for a limited period, such a detention was not a clear violation of law in this context. Plaintiffs do not seem to contest this in their briefs. Concerning the sei-

zure of Plaintiffs' vehicle, it was seized pursuant to statute—21 U.S.C. § 881(a)(4) & 19 U.S.C. § 1595a—which obviates the need for a warrant. Thus, not only was the seizure not a clear violation of law, it was legal. Again, Plaintiffs do not contest this in their briefs.

However, the Court finds that such conduct did not violate clearly established law, and reasonable law enforcement officers in the Defendants' positions could have believed that their conduct was lawful.

Prior case law authorized law enforcement officials to inventory property lawfully in their possession to: (1) safeguard the property, (2) protect the police and public from possible danger, and (3) protect the police against claims of loss or theft. *Colorado v. Bertine*, 479 U.S. 367, 372–73, 107 S.Ct. 738, 741–42, 93 L.Ed.2d 739 (1987). The order signed by Magistrate Judge Abram indicated the property could be entered and searched for the purpose of inventorying its condition and contents. Under the circumstances, a reasonable law enforcement official could have believed that looking in closets, cabinets and crawl spaces was lawful and was not a violation of the Fourth Amendment. All of these areas could have contained fixtures or property, the condition of which needed to be documented, or items such as weapons that were potentially dangerous. To this effect, what is significant is the agents' comprehension at the outset that an *in rem* warrant is limited in nature. That is, since they did not conduct the initial pre-consent search as if they were operating under a general search warrant, their actions were not clearly unlawful.

■ I also hold that it was not clearly established that bringing the dog into the residence violated the Plaintiffs' Fourth Amendment rights. Prior case law clearly held that a dog sniff was not a search. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Morales–Zamora*, 914 F.2d 200, 204–205 (10th Cir.1990); *United States v. Rodriguez–Morales*, 929 F.2d 780, 785 (1st Cir.1991), *cert. denied*, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). Plaintiffs fail to cite any prior case holding that the Fourth Amendment is violated by bringing a drug sniffing dog into a residence being seized pursuant to an *in rem* arrest warrant. Here, the agents had a right to be in the residence because of the *in rem* arrest warrant. Thus, Plaintiffs had no expectation of privacy during the execution of the warrant, so this was not a Fourth Amendment violation. Agent Simer also discussed the legality of using the dog on the seizure with an Assistant U.S. Attorney and was advised it was permissible. Under these circumstances, I find that reasonable law enforcement officials in the positions of the Defendants could have believed that using the dog in this manner was lawful.[4]

### 2. Consent to Search

■ The Defendants are also entitled to qualified immunity in connection with the subsequent evidentiary search because reasonable law enforcement officers could have believed that Mr. Trujillo voluntarily consented to the search. It is clear the Fourth Amendment is not violated when an individual voluntarily consents to a search. *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir.1990). Although, there is some dispute as to exactly what Mr. Trujillo stated, taken in the light most favorable to him, Mr. Trujillo admits that he said, "Go ahead and search, because you have already searched," or words to that effect. Because Mr. Trujillo would not sign the consent to search form, Agent Simer contacted an Assistant United States Attorney for an opinion on whether Mr. Trujillo's oral consent would permit a search. The Assistant United States Attorney advised Agent Simer that a search could be based on oral consent even though Mr. Trujillo refused to sign the written consent form. The weight of authority, at the time of the facts at issue had held that refusal to sign a consent form did not invalidate oral consent to search. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1988); *United States v. Archer*, 840 F.2d 567, 573 (8th Cir. 1988), *cf., North Carolina v. Butler*, 441 U.S. 369, 371, 99 S.Ct. 1755, 1756, 60 L.Ed.2d 286 (1979).

■ Under the facts of this case, I find that reasonable law enforcement officers could have concluded that Mr. Trujillo voluntarily consented to a search of his property.

---

4. All individual defendants but Simer and Yund are also entitled to summary judgment because there is no evidence they had any personal involvement in bringing the dog through the property. *Wulf v. City of Wichita, Kan.*, 883 F.2d 842, 864 (10th Cir.1989).

*Thompson v. City of Lawrence, Kan.,* 58 F.3d 1511, 1516 (10th Cir.1995). The fact that Chief Judge Matsch later ruled the consent was involuntary in the criminal case does not establish that the Defendants are not entitled to qualified immunity. An official can violate the Constitution and still be protected by qualified immunity. *Anderson,* 483 U.S. at 644, 107 S.Ct. at 3041. A law enforcement officer is not required to make a subjective on-the-spot determination as to whether a person's consent to search is so equivocal that it is involuntary. Qualified immunity is a protection for reasonable error because police should not always err on the side of caution out of fear of being sued. *Hunter v. Bryant,* 502 U.S. 224, 228–29, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (stating that "the agents nevertheless would be entitled to qualified immunity because their decision was reasonable, even if mistaken").

### 3. *Collateral Estoppel*

Plaintiffs contend that the doctrine of collateral estoppel requires that the Court grant their motion for summary judgment and deny the motions for summary judgment filed by the Defendants. This argument is premised on the fact that in the criminal case filed against Mr. Trujillo, Chief Judge Matsch granted the motion to suppress evidence, finding that the Fourth Amendment was violated. Thus, Plaintiffs argue the only issue left to be resolved is the amount of damages.

■ In order to assert collateral estoppel in this manner, the Plaintiffs must establish that: (1) the issue decided in the criminal case was identical to the issue in this case; (2) the criminal case resulted in a final adjudication on the merits; (3) the Defendants were parties to the criminal case or in privity with the United States; and (4) the Defendants had a full and fair opportunity to litigate the issue in the criminal case. *Orjias v. Stevenson,* 31 F.3d 995, 1010 (10th Cir.1994).

■ Collateral estoppel is not applicable because the individual Defendants in this case were not parties in the criminal case and were not in privity with the United States. The criminal case was brought on behalf of the United States of America. The

Assistant U.S. Attorney who prosecuted the criminal case was representing the United States, not the interests of the individual Defendants in this case. The Defendants in this case had no control over how the criminal case was handled and no ability to appeal Chief Judge Matsch's decision. Under these circumstances, there was no privity between the United States and the individual Defendants in this case. *See Garza v. Henderson,* 779 F.2d 390, 394 (7th Cir.1985); *Duncan v. Clements,* 744 F.2d 48, 51–53 (8th Cir.1984); *Warren v. Byrne,* 699 F.2d 95, 97 (2nd Cir. 1983); *Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.) *cert. denied,* 404 U.S. 843, 92 S.Ct. 139, 30 L.Ed.2d 78 (1971); *Griffin v. Strong,* 739 F.Supp. 1496, 1503 (D.Utah 1990).

Additionally, in the criminal case, the United States had the burden of proving that the evidence was seized in compliance with the Fourth Amendment. Here, the Plaintiffs have the burden of proving their Fourth Amendment rights were violated and that the Defendants are not entitled to qualified immunity. The issue decided by Chief Judge Matsch in the criminal case was not identical to the issue in this case. Judge Matsch ruled that the search violated the Fourth Amendment because Mr. Trujillo's consent was involuntary. Here, the Defendants have asserted the defense of qualified immunity. The Defendants are entitled to qualified immunity if reasonable police officers in their positions could have believed that Mr. Trujillo's consent was voluntary. The standard is whether the Defendants could have reasonably reached this conclusion, not whether the conclusion was in fact correct. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Thus, collateral estoppel does not apply because there is no identity of issues. *Orjias v. Stevenson,* 31 F.3d at 1010.

■ Furthermore, since the individual Defendants did not have the opportunity to fully and fairly litigate the validity of the search in the criminal case, applying collateral estoppel against them in this case would also violate their due process rights. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Ten Mile Indus.*

*Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1523 (10th Cir.1987).

Finally, and most fundamentally, collateral estoppel is not applicable because the issues—though related—are far from identical. Specifically, even though Judge Matsch found that the search and seizure violated Plaintiffs' Fourth Amendment rights, such a finding is not logically synonymous with finding that Defendants' "conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. If such were the case, then all suppression orders would automatically trigger section 1983 liability—a ludicrous result. *Hunter*, 502 U.S. at 227, 112 S.Ct. at 536. Put another way, every violation of one's rights is not clearly established. Accordingly, Plaintiffs' Motion for Summary Judgment must be denied.

### C. *Claims for Equitable and Declaratory Relief*

■ The Court finds that the Plaintiffs' official capacity constitutional claims for equitable and declaratory relief are moot. It is well settled that "[a] suit for prospective relief against official misconduct may become moot if the official action is discontinued and there is no reasonable expectation that it will recur." *The Presbyterian Church (U.S.A) v. United States*, 870 F.2d 518, 528 (9th Cir. 1989). Article III of the Constitution limits the subject matter jurisdiction of the federal courts to the adjudication of actual ongoing controversies between litigants. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). The petitioners' personal stake in the controversy between the parties must continue to exist throughout the duration of the case or it becomes moot. *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). This limitation on the jurisdiction of federal courts requires the Court to settle only those legal questions that will "affect[ ] the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987). Federal courts do not render advisory opinions.

*Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972).

■ In the present case, the search of Plaintiffs' property occurred on September 3, 1991. The amended complaint does not allege that there are any present plans to conduct an evidentiary search of Plaintiffs' property without a search warrant, nor have Plaintiffs even suggested that is the case. Therefore, the Court finds that the Plaintiffs have failed to establish that there is any reasonable expectation that the claimed unconstitutional actions will recur. Absent any allegation of fact which would establish that there is some real potential for recurrence, the Plaintiffs' claims for declaratory and injunctive relief are moot.

■ Additionally, the Plaintiffs lack standing to maintain these claims for declaratory relief. The Supreme Court has developed a three-factor test to evaluate whether a plaintiff retains standing in the Article III sense. First, a plaintiff must show a personal injury; second, that injury must be fairly traceable to the defendant's conduct; and third, it must be likely to be redressed by the relief requested. *See Allen v. Wright*, 468 U.S. 737, 750–51, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). Here, as in *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983), the Plaintiffs must demonstrate not that they suffered putatively unconstitutional conduct in the past, but that they are "realistically threatened by a repetition of [their] experience." And that threat must be real and immediate. *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). The Plaintiffs lack standing because they have not alleged the likelihood of being injured in the future. *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir.1994); *Facio v. Jones*, 929 F.2d 541, 545 (10th Cir.1991).

### D. *State Law Torts*

■ The third and fourth claims for relief allege the common law torts of trespass and outrageous conduct against the County Defendants in connection with the execution of the *in rem* seizure warrant and the consent search. As noted above, the Court has found that the County Defendants are entitled to

qualified immunity on Plaintiffs' Fourth Amendment claim. Accordingly, the Court finds there is no evidence that the County Defendants' actions were willful and wanton. Therefore, they also have qualified immunity from the state law torts pursuant to Colorado Revised Statute, § 24–10–118(2).

### E. *Statute of Limitations*

Traci and Curtis Lembke, pursuant to Fed.R.Civ.P. 12(b)(6), also moved to dismiss the amended complaint, contending Plaintiffs' claims are time-barred due to the expiration of the statute of limitations. This motion is granted.

■ The amended complaint alleges that the Lembkes violated Plaintiffs' Fourth Amendment rights on September 3, 1991. However, the Lembkes were not named as defendants in this case until July 8, 1994, when the amended complaint was filed. A *Bivens* claim is subject to the general personal injury statute of limitations of the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985); *Industrial Constructors v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir.1994). Plaintiffs' claims arose in Colorado, the state where the alleged unlawful search and seizures took place. Colorado's general statute of limitations for personal injury claims provides that a claim must be brought within two years after the action accrues. C.R.S. § 13–80–102.

■ Plaintiffs' cause of action accrued on September 3, 1991, the date of the alleged unconstitutional search and seizures. The amended complaint alleges the Plaintiffs were present at their residence when the search and seizures occurred, and therefore knew of their claimed injuries on that date. *Industrial Constructors*, 15 F.3d at 968–69. Thus, the statute of limitations expired on September 3, 1993, 10 months before the Lembkes were named as defendants.

■ Fed.R.Civ.P. 15(c) does not allow the Plaintiffs to relate the amended complaint naming the Lembkes back to the original complaint filed on August 24, 1993. This rule requires that the party to be brought in by amendment, "... knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R.Civ.P. 15(c)(3)(B). Here, there was no *mistake* concerning the identity of the Lembkes, the Plaintiffs simply lacked knowledge of their identities when they filed the original complaint. Under the circumstances, Fed. R.Civ.P. 15(c) does not allow the Plaintiffs to relate their claims against the Lembkes back to the John Doe defendants identified in the original complaint. *Wilson v. United States*, 23 F.3d 559, 562–563 (1st Cir.1994); *Worthington v. Wilson*, 8 F.3d 1253, 1255–1257 (7th Cir.1993); *Ford v. Hill*, 874 F.Supp. 149, 154 (E.D.Ky.1995).

■ Additionally, the Plaintiffs have failed to allege or establish that the Lembkes had notice of the complaint within the time frame required by Fed.R.Civ.P. 15(c)(3). The Plaintiffs' contention that service on the United States Attorney satisfied this requirement is without merit because the Lembkes were sued in their individual capacities which required that they be personally served. *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1437 (10th Cir.1994).

### IV. *CONCLUSION*

For the above stated reasons, I enter the following Orders: (1) Defendants' motions for summary judgment are GRANTED as to the First Claim for Relief; (2) the Second Claim for Relief is DISMISSED with prejudice by stipulation of the parties; (3) the County Defendants' motion for summary judgment on the Third and Fourth Claims for Relief is GRANTED; (4) the Third and Fourth Claims for Relief are DISMISSED against the United States; (5) Lembke's motion to dismiss is GRANTED with prejudice; and (6) Plaintiffs' motion for summary judgment is DENIED. Judgment shall enter accordingly.