No. 111,569

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT K. MILLER,
*Appellant*,

v.

BOARD OF COUNTY COMMISSIONERS, WABAUNSEE COUNTY, KANSAS,
*Appellees*.

SYLLABUS BY THE COURT

1.

K.S.A. 2014 Supp. 19-430(a) provides the board of county commissioners with statutory authority to appoint a county appraiser to a 4-year term.

2.

The plain and unambiguous language of K.S.A. 2014 Supp. 19-431(a) authorizes the board of county commissioners to enter an order terminating a county appraiser upon a finding the appraiser failed or neglected to properly perform the duties of office. The order of termination must state the reasons for such termination and must be served upon the appraiser.

3.

If timely requested, an order from the board of county commissioners that terminates a county appraiser from office is subject to review by the Property Valuation Division of the Kansas Department of Revenue (PVD). Upon such a request, the PVD is required to conduct a hearing to make inquiry as to all facts connected with the termination. If, after the hearing, the presiding officer determines that the appraiser

1

should be terminated, then the presiding officer shall issue an order removing such appraiser.

4.

The fact that the Property Valuation Division of the Kansas Department of Revenue is vested with authority to conduct a posttermination hearing at which it makes "inquiry as to all facts" connected with the termination does not divest the Board of its authority to terminate the county appraiser in the first instance.

5.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. The fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. Courts look to the plain and unambiguous language of a statute as the primary basis for determining legislative intent.

6.

The statutory language of K.S.A. 2014 Supp. 19-431(a) reflects the legislature's intent that review of a board of county commissioners' termination decision by the Property Valuation Division of the Kansas Department of Revenue (PVD) is limited to (1) conducting a hearing on the county appraiser's termination; (2) making inquiry as to all facts connected with such termination; and (3) rendering an order removing the county appraiser if the PVD determines that (a) the facts presented at the hearing support the board's finding of evidence satisfactory to the board that the county appraiser failed or neglected to properly perform the duties of his or her position; (b) the board entered an order stating the reasons for the termination; and (c) the order was served upon the county appraiser.

7.

Judicial review of an agency action is governed by the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. Appellate courts exercise the same statutorily limited review of the agency's decision as does the district court, as though the appeal had been made directly to the appellate court.

8.

An appellate court reviews an agency's factual findings in light of the record as a whole to determine whether those findings are supported by substantial competent evidence.

9.

Public employees with a property interest in continued employment have a right to pretermination procedural safeguards based on the constitutional right to procedural due process. The purpose of a pretermination hearing is to determine whether there are reasonable grounds to believe the charges against the employee are true and support termination.

10.

When coupled with posttermination procedures, a public employee is entitled to oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to present his or her side of the story. To require more would intrude too much on the government's immediate interest in removing the employee.

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Opinion filed June 19, 2015. Affirmed.

*Robert J. Perry*, of Auburn, for appellant.

*Teresa L. Watson*, *Terelle A. Mock*, and *Sarah A. Morse*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellees.

Before HILL, P.J., STANDRIDGE and ATCHESON, JJ.

STANDRIDGE, J.:  In 2011, Robert K. Miller was terminated pursuant to K.S.A. 19-431(a) by the Board of County Commissioners of Wabaunsee County (Board) from his position as the county appraiser following several performance-related issues. Miller filed an administrative appeal with the Property Valuation Division of the Kansas Department of Revenue (PVD), which overturned his termination on grounds that the Board had breached its written employment agreement with Miller. On review, the district court concluded that the PVD lacked authority to consider or decide a breach of contract claim because its sole authority was to review the Board's action under K.S.A. 19-431(a). As a result, the court vacated the PVD's order and remanded the case for the PVD to review the propriety of Miller's termination under the criteria set forth in the statute. On remand, the PVD upheld Miller's termination as proper under K.S.A. 19-431(a). The district court affirmed this decision. On appeal, Miller requests reversal of the district court's remand order and reinstatement of the PVD's original order overturning his termination. Finding no error, we affirm the district court's order affirming the decision of the PVD holding Miller's termination was proper under the applicable statute.

FACTS

In 1999, the Board appointed Miller to the position of Wabaunsee County Appraiser. The Board subsequently reappointed Miller to a 4-year term in 2001, 2005,

4

and 2009. Miller signed a written employment agreement with the Board upon each appointment. The most recent agreement provided that Miller would serve as the Wabaunsee County Appraiser for a 4-year term from July 1, 2009, through June 20, 2013, or until a successor was appointed. The agreement also provided that the Board could remove Miller as county appraiser prior to the expiration of this term according to the procedures and standards set forth in K.S.A. 19-431(a).

Ervan Stuewe is a member of the Board and has held that elected office since 2003. James Suber and Rodney Allen are the other two members of the Board. On March 14, 2011, the Board met with Miller in executive session and provided him with the following written statement:

> "We have had concerns about your office for some time and it seems that things never get settled down. You have a high employee turnover, employees have not been trained and tasks have not been completed on time or just barely on time. When issues are brought to your attention it appears that your employees are made to suffer for speaking out. There have been issues about use of leave time, clocking out for lunch and on duty over use of a cell phone. At this point, our consensus is that it would be in the best interest of Wabaunsee County for you and the County to part ways. Before taking any employment action, we will give you the option to resign. We are open to negotiating a mutually agreeable separation agreement including a reasonable severance pay package. After this closed session, it is our intention to go back into the open meeting and vote whether or not to place you on paid suspension status until next Monday when we expect you to give us your decision. Should you wish to avoid that, you can choose to take voluntary leave until next Monday."

After providing the written statement to Miller, Commissioner Suber read the contents of the document out loud. Miller was given an opportunity to respond to the performance issues raised in the letter but chose not to, except to say that he would not resign.

5

Miller brought his attorney with him to the executive session that was held prior to the Monday meeting held on March 21, 2011. Although the executive session was planned to last 30 minutes, the session ended after 10 minutes. The Board then opened the meeting up to the public. In this open meeting, the Board voted 3-0 to adopt Order #1 concerning the employment of Miller and, pursuant to the provisions of K.S.A. 19-431(a), terminated Miller's employment. The reasons for termination set forth in Order #1 were:

> "1.  The appraiser has failed or neglected to perform the duties of his office by not providing adequate training and supervision to his employees.
>     i.  Several of the offices['] recent employees charged with taking care of personal property have left the office or been fired. They expressed concerns about proper training.
>     ii.  The current personal property employee was provided no direct training by the appraiser, was instructed to call other counties to figure out her duties, and missed a deadline to switching property over between two years due to lack of training.
>     iii.  The County Clerk has for several years had to assist the appraiser['s] office to obtain annual certified values and she has had to train employees of the appraiser.
>     iv.  The appraiser has failed to review and audit the work of his employees.
>     v.  Compared to other offices of Wabaunsee County the appraiser's office has a high rate of turn over [*sic*].
> "2.  The appraiser has failed or neglected to perform the duties of his office by spending work time taking or making excessive personal phone calls for long periods during the day. Most of these calls were made in an open office [within] hearing distance of his employees that has also lowered their productivity.
> "3.  The appraiser violated Wabaunsee County work policies by taking more personal leave than he was allocated.
> "4.  The appraiser violated Wabaunsee County work policies by not clocking in and out as directed."

6

Miller appealed the Board's decision to the PVD pursuant to K.S.A. 19-431(a). Following a 3-day administrative evidentiary hearing, the PVD's hearing officer concluded that Miller's termination was not proper because the Board had breached its written employment agreement with Miller by failing to follow the procedure set forth in Wabaunsee County's guidelines for discipline of county employees. Given this breach, the PVD's hearing officer declined to consider whether Miller's termination was proper under K.S.A. 19-431(a) and ordered that Miller be reinstated as county appraiser and paid "all salary and benefits" since the date of his termination.

After the Board's motion for reconsideration was denied, it sought judicial review by the district court. The district court concluded that the PVD lacked statutory authority to hear or decide a breach of contract claim because its sole authority was to review the Board's action under K.S.A. 19-431(a). As a result, the court vacated the PVD's order and remanded the case in order for the PVD to review Miller's termination under K.S.A. 19-431(a).

While the administrative appeal was pending, Miller filed an action in district court against the Board, the individual Board members, Wabaunsee County, and the Wabaunsee County Clerk (collectively defendants), claiming breach of contract and various torts relating to his termination. In response, the defendants filed a motion for judgment on the pleadings requesting the court to dismiss all tort claims. The district court granted the motion and dismissed those claims. Miller later stipulated to a dismissal without prejudice with regard to his breach of contract claim.

Following remand of the administrative appeal, the PVD found sufficient evidence in the record to support the Board's finding that it was satisfied Miller had failed or neglected to properly perform the duties of the office. Accordingly, the PVD issued an order holding that Miller's termination was proper under K.S.A. 19-431(a). On review, the district court ultimately affirmed the decision rendered by the PVD.

7

As he did with the district court, Miller seeks relief from the PVD's October 9, 2013, order deeming Miller's termination proper under K.S.A. 19-431(a). In order to help clarify the nature and scope of the PVD actions challenged by Miller, we find it helpful to differentiate between the scope of the Board's authority to terminate a county appraiser and the scope of the PVD's authority to review the Board's decision as set forth in K.S.A. 19-431(a), which governs the administrative process to be used when the Board makes a decision to terminate a county appraiser.

The board of county commissioners has statutory authority to appoint a county appraiser to a 4-year term. K.S.A. 2014 Supp. 19-430(a). The board of county commissioners also has statutory authority to remove a county appraiser prior to the expiration of the 4-year term. Such removal must be accomplished according to the procedures and standards set forth in K.S.A. 2014 Supp. 19-431(a). More specifically, the board of county commissioners may enter an order terminating the county appraiser from office only when it appears "by evidence satisfactory to such board that the appraiser of such county or district has failed or neglected to properly perform the duties of office." K.S.A. 2014 Supp. 19-431(a). The order of termination must state the reasons for such termination and must be served upon the appraiser. Upon service, the county appraiser is immediately divested of all powers associated with the office and the board of county commissioners must appoint a temporary appraiser to discharge the duties of the office until the vacancy is permitted to be filled. K.S.A. 2014 Supp. 19-431(a).

If timely requested, an order from the board of county commissioners that terminates a county appraiser from office is subject to review by the PVD. Upon such a request, the PVD is required to conduct a hearing in accordance with the provisions of the Kansas Administrative Procedure Act (KAPA). K.S.A. 2014 Supp. 19-431(a). The KAPA authorizes the office of administrative hearings to assign an officer to preside over

the hearing. K.S.A. 2014 Supp. 77-514(a). At this hearing, the assigned presiding officer shall make inquiry as to all facts connected with the termination. The presiding officer is not "bound by technical rules of evidence" and "shall give the parties reasonable opportunity to be heard and to present evidence." K.S.A. 77-524(a). If, after the hearing, the presiding officer determines that the appraiser should be terminated, then the presiding officer shall issue an order removing such appraiser. A copy of such order shall be sent to the board of county commissioners, which is then required to be recorded in full upon the journal of the board. The appraiser office shall become vacant immediately upon service of this order, and it is at this point that the board of county commissioners becomes authorized to appoint an eligible Kansas appraiser to fill the vacancy. K.S.A. 2014 Supp. 19-431(a).

A. *The Board's authority to terminate the employment of a county appraiser*

Relying on this statutory framework, Miller first argues that K.S.A. 2014 Supp. 19-431(a) does not provide the Board with the necessary legal authority to terminate him; therefore, the Board's order of termination had no legal effect on his employment. Specifically, Miller contends the PVD posttermination hearing process described in K.S.A. 2014 Supp. 19-431(a) is the exclusive procedure for terminating the employment of a county appraiser in Kansas. Contrary to Miller's argument, however, the plain and unambiguous language in K.S.A. 2014 Supp. 19-431(a) clearly authorizes the Board to enter an order terminating an appraiser upon a finding the appraiser failed or neglected to properly perform the duties of office. The order must state the reasons for the termination and be served on the appraiser.

Here, the Board entered an order on March 21, 2011, terminating Miller based on its finding that he had failed or neglected to properly perform the duties of office. The Board's order then specifically set forth the reasons for his termination. Thereafter, Miller timely requested and received a hearing before the PVD, which initially reversed the

9

termination but on remand from the district court ultimately affirmed the Board's decision. The fact that the PVD is vested with the authority to conduct a posttermination hearing at which it makes "inquiry as to all facts" connected with the termination does not divest the Board of its authority to terminate the county appraiser in the first instance. See K.S.A. 2014 Supp. 19-431(a). Accordingly, Miller's first argument is without merit.

B. *The PVD's alleged failure to consider the progressive discipline policy*

Next, Miller argues that the PVD terminated his employment notwithstanding undisputed evidence that the Board failed to comply with the progressive discipline policy set forth in the Wabaunsee County Personnel Policies and Guidelines. Based on the manner in which Miller has framed this issue on appeal, it is unclear whether Miller is arguing (1) that the PVD erred as a matter of law by deferring to the Board's decision to bypass the progressive discipline policy or (2) that the PVD's order removing him from the county appraiser position was not supported by substantial competent evidence presented at the hearing. Given this ambiguity, we will consider both of these issues.

1. *Standard of review:  deference or de novo?*

Miller appears to assert the PVD erroneously interpreted the law by applying the wrong standard of review to make its decision. Miller contends that K.S.A. 19-431 required the PVD to review the Board's order de novo, but the PVD simply considered whether the evidence presented supported the Board's decision to terminate his employment.

As Miller asserts, the PVD expressly construed K.S.A. 19-431 to preclude it from reviewing the Board's termination order de novo:

> "The language of K.S.A. 19-431(a) does not suggest that the presiding officer should substitute his/her judgment for that of the Board; it does not allow *de novo* review

10

or any type of heighted scrutiny by the [PVD] of the facts relied upon by the Board. Rather, it dictates deference to the judgment and decision of the Board."

Determining the proper standard of review to be utilized by the PVD in reviewing the termination of a county appraiser under K.S.A. 2014 Supp. 19-431(a) requires us to interpret that statute. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013). The fundamental rule of statutory interpretation is that the intent of the legislature is dispositive if it is possible to ascertain that intent. The language of a statute is the primary consideration in ascertaining the intent of the legislature because the best and only safe rule for determining the intent of the creators of a written law is to abide by the language that they have chosen to use. Courts therefore look to the plain and unambiguous language of a statute as the primary basis for determining legislative intent. See *Merryfield v. Sullivan*, 301 Kan. 397, Syl. ¶ 2, 399, 343 P.3d 515 (2015).

Given the language of K.S.A. 2014 Supp. 19-431(a), we conclude the legislature clearly intended the PVD to give some degree of deference to the Board's termination decision. Significantly, the statutory language readily distinguishes between the duties, obligations, and authority conferred upon a board as compared to the PVD:

- The board is authorized to enter an order terminating the county appraiser from office if it appears by evidence satisfactory to the board that the county appraiser failed or neglected to properly perform the duties of office. The county appraiser is divested of all power upon service of this order.
- The board is authorized to appoint a temporary appraiser to discharge the duties of the office until the vacancy is filled.
- The PVD is authorized to conduct a hearing on the termination if timely requested.
- The PVD is authorized to make inquiry as to all facts connected with the county appraiser's termination.

11

- The PVD is authorized to render an order removing the county appraiser if it determines that the appraiser should be terminated. The office of the county appraiser shall become vacant immediately upon service of the PVD order of removal.

Miller relies on the authority statutorily conferred upon the PVD to support his argument that the legislature intended the PVD to review a board's termination order de novo. To accept Miller's argument, however, we are required to disregard the language in that same subsection of the statute establishing the standard of review against which the legislature clearly intended termination decisions to be measured: "*evidence satisfactory to such board* that the appraiser of such county or district has failed or neglected to properly perform the duties of office." (Emphasis added.) K.S.A. 2014 Supp. 19-431(a). The addition of the phrase "satisfactory to such board" compels us to conclude that a county appraiser can be terminated *only if the board is satisfied* that there is evidence the county appraiser has failed or neglected to properly perform the duties of office. There appears to be no other reason for the legislature to have added the phrase, and we cannot construe the statute in a manner that renders any aspect of the language to be meaningless. See *In re Tax Protest of United Ag Services*, 37 Kan. App. 2d 902, 908, 159 P.3d 1050, *rev. denied* 285 Kan. 1174 (2007).

For the reasons stated above, we conclude the legislature did not intend the PVD to substitute its judgment for that of the Board. As such, we hold the PVD's review was limited to (1) conducting a hearing on the county appraiser's termination; (2) making inquiry as to all facts connected with such termination; and (3) rendering an order removing the county appraiser if the PVD determined that (a) the facts presented at the hearing support the Board's finding of evidence satisfactory to the Board that the county appraiser failed or neglected to properly perform the duties of his position; (b) the Board entered an order stating the reasons for the termination; and (c) the order was served upon Miller.

12

2. *Substantial competent evidence*

Judicial review of an order entered by the PVD is governed by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. An appellate court exercises the same statutorily limited review of the agency's decision as does the district court, so review of the agency's decision is the same as if it had been appealed directly to this court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). The burden of proving the invalidity of agency action is on the party asserting invalidity, which in this case is Miller. See K.S.A. 2014 Supp. 77-621(a)(1).

Construing Miller's request for relief as a claim of insufficient evidence, we review the factual determinations of the PVD in light of the record as a whole to determine whether those findings are supported by substantial competent evidence. See K.S.A. 2014 Supp. 77-621(c)(7).

> "'[I]n light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2014 Supp. 77-621(d).

Applying this standard of review, we conclude the facts presented at the hearing support the PVD's finding of evidence sufficient to have satisfied the Board that Miller failed or neglected to properly perform the duties of his position.

13

At the hearing, the Board commissioners testified at great length about the significant performance problems Miller had throughout his tenure as county appraiser and that it was these problems that formed the basis for their decision to terminate his employment. These included failing to train and supervise employees in the office, failing to ensure the quality of the work coming out of the appraiser's office, disputing the need to clock in or out or otherwise keep track of his working time, claiming time worked when he was out of the office on personal matters, making excessive and disruptive personal phone calls while working in the office, and taking more personal leave than he was allotted.

In addition to the commissioners, many current and former employees working under Miller's supervision testified about Miller's failure to provide them the training they needed to properly perform their jobs. Miller's employees also testified that he did not review their work. As a result, when the work was submitted to the county clerk, errors were discovered that Miller could have and should have identified and corrected.

Commissioner Stuewe testified that employees in the county appraiser's office complained about the lack of supervision and direction they received from Miller. Stuewe also received complaints from employees in the county treasurer's office and the county clerk's office about the quality of the work product submitted to them by the county appraiser's office. Stuewe said he received these complaints "on a constant basis from the very beginning [s]o I knew that things were not always getting done as they should have been done."

There is also a great deal of evidence in the record to establish that Miller was engaged in a "constant battle" with the Board over whether he was required to clock in and out when he worked, as other county employees were required to do. The Board first addressed the issue of clocking in and out with Miller in 2005. Miller told the Board he did not believe he was required to clock in and out when he worked, but the Board

14

disagreed and instructed him that he was required to keep track of his working time. Stuewe testified that the Board repeatedly directed and redirected Miller to clock in and out. Stuewe testified that he also spoke to Miller one-on-one about the need to clock in and out when he was working.

Jennifer Savage is the Wabaunsee County Clerk and has served in that capacity since 2001. Savage has worked in the clerk's office since 1981. Savage testified that when Miller did keep track of his time, the time sheets were not accurate. She gave several examples of occasions when Miller told Savage he was going home to bale hay or go hunting with friends. When Savage checked Miller's time sheets, Miller had claimed to be working the entire day.

In late 2010, an issue arose regarding Miller taking more personal time off than he had been allocated. Savage testified Miller had used more personal leave than he had earned. Miller admitted that this was so. Stuewe testified that the situation was brought to the Board's attention and was later discussed with Miller.

On February 1, 2011, Miller was clocked in for 2 hours in the morning. When Miller turned in his time sheet, he made a handwritten note that he worked from home for an additional 6.25 hours that day. Savage checked the activity records for Orion, a computer program used by the appraiser's office. The records reflect that on February 1, 2011, Miller was using Orion during the 2-hour period he was clocked in, but he did not access the program at all the rest of the day.

The transcript from the PVD hearing also reflects that employees in the appraiser's office and other county offices on the second floor of the courthouse repeatedly complained to Stuewe that Miller spent excessive amounts of time on personal phone calls. One employee, whose desk was next to Miller's, testified that during the time she worked there, Miller made 12 to 15 personal phone calls per day on his cell phone and on

15

the office line. Another employee testified that Miller spent more than 2 hours a day in the office on personal calls. Yet another employee said the phone calls made it difficult to do her job because Miller was unavailable to help her or taxpayers in the office. She also said that "sometimes they weren't positive calls. Sometimes he was upset over them, so there was a phone slamming or slamming the phone shut or slamming the phone down and just kind of interrupting because I could hear it out from the front."

Based on all of these performance problems, the Board did not give Miller a merit increase in 2000, 2008, and 2009. Significantly, he was one of only a few county employees who did not receive a merit increase. In January 2010, the Board placed Miller on probation for 4 months. Miller was placed on probation because of an accumulation of performance issues, "plus the fact that that office had sent out personal property notices late." At the same time, the Board repeated its directive that Miller make sure he clocked in and out and "provide us 40 hours a week in the office." At this point, the Board also rescinded Miller's 1.5% cost of living increase in salary.

Stuewe testified that by early 2011, the ongoing nature of Miller's deficient job performance finally caused a complete breakdown in trust between the Board and Miller. This lack of trust permeated throughout the entire courthouse. Stuewe said the other county offices and the appraiser's office "weren't working together. People felt like [Miller] was getting away with things that he shouldn't be. It was not giving other employees a lot of confidence in us, I guess. It just wasn't a good working relationship." In early 2011, Commissioner Suber informed Miller that he would not receive a merit raise. When Miller asked why, Suber responded that it was because Miller had used too much leave, had time clock issues, and had disgruntled employees.

Miller then confronted one of the two employees working in his office and asked if he had "disgruntled employees." The employee felt "cornered." Shortly thereafter, the employee approached Stuewe and told him she was "extremely upset" by this

16

confrontation. Stuewe characterized this employee as an "excellent employee." Stuewe testified that this conversation "pushed [him] over the edge." Stuewe explained why his dissatisfaction with Miller finally reached a breaking point:

> "Well, I live in a small community. I knew most of the people. In fact, I know all the people in the courthouse very well. I saw people that were hurt because of things that happened, people that were frustrated. I didn't feel like the taxpayers were being served. There was work that wasn't being performed. There were people in other offices that weren't getting work funneled to them as they needed to. They, in turn, looked bad. And I just personally had lack of trust. I did not feel confident in—in what Mr. Miller was doing, and I felt like there's been damage that—that couldn't be repaired unless someone else was in that office."

In his brief, Miller does not dispute any of the veracity of any of the facts in the record. Nevertheless, he claims he is entitled to relief from the PVD's order of termination because these facts, when viewed in light of the record as a whole, do not amount to substantial competent evidence sufficient to support the PVD's decision to terminate him. More specifically, Miller argues the PVD failed to consider the Board's failure to utilize the county employee progressive discipline policy in deciding that the Board's decision to terminate his employment was proper. Miller argues the PVD's failure in this regard is a breach of its statutory duty to make inquiry as to *all facts* connected with his termination. We are not persuaded by Miller's argument. As a preliminary matter, the PVD's initial order finding in favor of Miller makes clear that it did inquire into the Board's failure to utilize the progressive discipline policy as set forth in the Wabaunsee County Personnel Policies and Guidelines. The statute requires only inquiry into the facts connected with the termination, which the PVD did in this case.

Notably, however, we would not have granted relief in favor of Miller even if the PVD had failed to make inquiry into the progressive discipline policy. As the district court held, Miller's claim of wrongful termination based on the Board's failure to utilize

17

the progressive discipline policy is a breach of contract claim separate and distinct from the statutory process and, as such, falls outside the scope of the PVD's limited jurisdiction as set forth in K.S.A. 2014 Supp. 19-431.

Finally, even if the progressive discipline policy was relevant to the statutory criteria, was within the scope of the PVD's limited jurisdiction, and was not actually considered by the PVD as part of its review, we would deem any failure by the PVD to consider the policy to be harmless error that does not serve to invalidate the PVD's order removing Miller from office. See K.S.A. 2014 Supp. 77-621(e) (in deciding whether to grant relief on judicial review of a challenge to the validity of agency action, "due account shall be taken by the court of the rule of harmless error"). As noted above, Miller does not dispute the veracity of any of the factual findings made by the PVD in its order. Instead, he appears to argue that the PVD's alleged failure to consider whether the Board complied with the progressive discipline policy is so significant that it essentially undermines the substantial nature of the evidence supporting the PVD's decision. We disagree. We have considered the evidence in the record that supports and the evidence that detracts from the PVD's findings. See K.S.A. 2014 Supp. 77-621(d). In so doing, we find substantial evidence supports the PVD's finding of evidence satisfactory to the Board that Miller failed or neglected to properly perform the duties of his position as county appraiser.

C. *Salary and benefits*

Miller argues the district court erroneously held he was not entitled to be fully compensated from March 21, 2011, to June 30, 2013, the date his appointment expired. Relying on language in *Kennedy v. Board of Shawnee County Comm'rs*, 264 Kan. 776, Syl. ¶ 2, 958 P.2d 637 (1998), Miller claims the Board's decision to terminate him should have been deemed a suspension with full salary and benefits pending conclusion of the

K.S.A. 19-431(a) posttermination administrative proceedings, which did not happen until after his term expired.

There, Kennedy was appointed county appraiser in August 1992 to fill the unexpired term of another. The term was to end June 30, 1993. The board of county commissioners voted on January 4, 1993, to reappoint Kennedy to a 4-year term to begin July 1, 1993. Two new county commissioners were sworn in, and the newly configured board voted on January 11, 1993, to rescind the earlier resolution to appoint Kennedy to a 4-year term beginning July 1, 1993. The board had a change of heart and in April 1993 voted to appoint Kennedy to a new 4-year term.

Reversing course once again, the board voted to terminate Kennedy on May 27, 1993. The board stated that the termination was based on "'failure or neglect and for other cause.'" 264 Kan. at 778. The board also voted to rescind the April resolution appointing Kennedy to a 4-year term. The PVD upheld the removal.

Kennedy filed a petition for judicial review in the district court. The issues on review were: (1) whether the agency's findings of fact were supported by substantial evidence; (2) whether Kennedy had an enforceable agreement to serve as county appraiser for a 4-year term beginning July 1, 1993; and (3) whether Kennedy's termination was impermissibly based on retaliation for exercise of his First Amendment rights. The district court and the Kansas Supreme Court rejected all of Kennedy's arguments and upheld his termination. 264 Kan. at 802-03.

Miller focuses on the Kansas Supreme Court's discussion of Kennedy's second issue. The thrust of Kennedy's argument was that the board had committed itself to appointing him to a 4-year term beginning July 1, 1993, and could not later rescind that commitment—even though the board voted to rescind the appointment before the term of the appointment began. Kennedy argued that the board, by its actions, created an implied

19

contract for employment for a 4-year term beginning July 1, 1993. The Supreme Court disagreed, adopting the reasoning of the district court that there could be no implied contract for employment because K.S.A. 19-430 and K.S.A. 19-431 dictated "'the exact manner by which the position both may be filled and exited, precluding, therefore, any implied basis to either obtain it or leave it other than by the terms of the statute.'" 264 Kan. at 790. In the court's view, the county appraiser's statutory term began on July 1, and no implied contract for employment for the 4-year term could arise out of any promises made and rescinded before that date.

Kennedy filed a separate cause of action in the district court, which was consolidated with the administrative appeal, and in it he raised a constitutional challenge to K.S.A. 19-431. Kennedy argued that the statute was unconstitutional because it did not provide for notice of the reasons for termination and a meaningful opportunity to be heard prior to the termination. The court emphasized its duty to construe a statute in such a manner that preserves its constitutionality. 264 Kan. at 797-98. Although the court observed that K.S.A. 19-431 requires that the board supply notice of the reasons for the termination and provides for a hearing before the PVD, the undisputed facts of the case reflected that the board did not provide any factual reasons for the termination when it passed the resolution terminating Kennedy as county appraiser. The board's "Order of Termination" attached to resolution stated:

> "'The reasons for your termination include but are not limited to the following: You have failed or neglected to properly perform the duties of the office. The general statutory duties are set forth in K.S.A. 79-1412a. Additional duties are set forth in the position description for Shawnee County Appraiser. This termination is for such failure or neglect and for other cause.'" 264 Kan. at 778.

Given the board did not comply with the requirement in K.S.A. 19-431 to supply notice of the reasons for the termination, the Supreme Court followed the district court's lead and construed the board's action to have merely suspended Kennedy's employment;

20

thus, Kennedy was not actually terminated from employment until the PVD entered its order removing him from office. Construing the notice provided by the board as a suspension in conjunction with the opportunity for Kennedy to be heard at the subsequent evidentiary hearing, the court ultimately held the proceedings as a whole complied with due process requirements. 264 Kan. at 798-800. And consistent with its interpretation of the board's decision as a suspension, the court affirmed the district court's decision to grant Kennedy an award of back pay from the date the board suspended him (May 27, 1993), until the end of his then-current term (June 30, 1993), which amounted to approximately 1 month's pay. 264 Kan. at 799, 803. In affirming the district court's decision to award back pay and benefits, the court specifically noted the district court's reliance on the United States Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

In *Loudermill*, the Court considered the extent of pretermination process to be accorded a public employee who can be discharged only for cause. *Loudermill* was comprised of two cases that were consolidated, both of which involved a complete severance of the employment relationship and allegations of the employees' fault (lying on an employment application) or deficiency (failure of an eye examination). Like the facts in *Kennedy*, both of the employees were discharged without any opportunity to contest the facts on which their discharges were based. Both had plausible arguments to make that might have prevented their discharge. To that end, one of the employees actually was reinstated after a posttermination hearing. Nevertheless, the district court dismissed both cases for failure to state a claim for which relief could be granted.

On appeal, the *Loudermill* Court determined that public employees with a property interest in continued employment have a right to pretermination procedural safeguards based on the constitutional right to procedural due process. The pretermination hearing is "an initial check against mistaken decisions" and "need not definitively resolve the propriety of the discharge." 470 U.S. at 545. The purpose is to determine whether there

21

are reasonable grounds to believe the charges against the employee are true and support termination. The hearing is necessary but need not be formal. The requirements will depend upon the interests involved and the nature of subsequent proceedings. When coupled with posttermination procedures, the Court held that the public employee is entitled to oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to present his or her side of the story. To require more, the Court concluded, would intrude too much on the government's immediate interest in removing the employee. A pretermination opportunity to respond is all the process that is due. But because the *Loudermill* plaintiffs alleged they had no chance to respond, the Court ultimately held the district court erred in dismissing the cases for failure to state a claim. 470 U.S. at 545-46, 548.

The facts presented in this case are distinguishable from the facts presented in *Kennedy* and *Loudermill*, where the employees were not given an explanation of why the employee was being terminated, evidence to support the termination decision, or *an opportunity* to present the employee's side of the story for purposes of an initial check against mistaken facts. Here, the Board provided Miller with written documentation on March 14, 2011, advising him that he could resign or would be terminated in 1 week's time based on a finding of evidence satisfactory to the Board that Miller failed or neglected to properly perform the duties of his position as county appraiser. The written documentation provided the factual basis supporting the Board's action in this regard and was served on Miller as required by statute. On March 21, 2011, the Board set aside 30 minutes in order to provide Miller an opportunity to be heard on the termination decision, but Miller opted not to take advantage of that opportunity.

Again, the purpose of a pretermination hearing is to determine whether there are reasonable grounds to believe the charges against the employee are true and support termination. Before the Board entered its order of termination, Miller was provided with the charges against him and given two opportunities to be heard in order to dispute any of

22

the allegations of deficient performance. He did not take advantage of either opportunity. In the words of the United States Supreme Court, to require the Board to have done anything more than it did in this matter before entering its order of termination "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." 470 U.S. at 546. A pretermination opportunity to respond is all the process that is due.

Given Miller had two opportunities to be heard before the Board entered the termination order, we conclude he was not deprived of his right to procedural due process prior to termination, regardless of the posttermination process available to him. Consistent with the standards governing procedural due process, and based on the plain reading of the statute that confers upon the Board the authority to both suspend *and terminate* a county appraiser, we conclude the Board's decision to terminate Miller was a final termination decision and not a suspension. As such, Miller is not entitled to full salary and benefits from the time he was terminated on March 14, 2011, to the date the PVD hearing was held or to the date that the PVD's decision (or appeal from such decision) is final.

Affirmed.

* * *

ATCHESON, J., dissenting:  To prop up the termination of Robert K. Miller as Wabaunsee County Appraiser, the majority dilutes the statutory authority of the Kansas Department of Revenue to review those decisions made by county commissions and, even more dangerously, sends the due process rights of public employees hurtling back toward the 19th century. Each of those pillars essential to affirming Miller's firing amounts to a material misapplication of the law. I, therefore, respectfully dissent.

23

The department's review should have been made without any deference to the county commissioners' decision to fire Miller. The language of K.S.A. 19-431(a) requires nothing less. And I would find the county commissioners afforded Miller constitutionally inadequate due process before firing him—they really gave him none at all. As I explain, the combined effect of those deficiencies requires that Miller's discharge in March 2011 be treated as a suspension with pay through the balance of his term as appraiser. See *Kennedy v. Board of Shawnee County Comm'rs*, 264 Kan. 776, 799-800, 958 P.2d 637 (1998). Because that term ended in June 2013, the county owed Miller compensation until then, and the legal dispute should now be viewed as moot in all other respects.

The majority doesn't see it that way and undercuts Miller's due process challenge by approving a procedure that eliminates any meaningful predeprivation opportunity to be heard in combination with a postdeprivation hearing giving deference to the decisionmaker's adverse action. The resulting concoction amounts to a severe denigration of due process rights that, if allowed to stand, could become a blueprint for government entities to deny those constitutional protections in all sorts of contexts.

The controlling issues here are legal, and the facts relevant to them are undisputed. So I don't rehash Miller's job performance as the Wabaunsee County Appraiser. Miller held the position for an extended time. But a lot of evidence suggests he did something short of a stellar job. Regardless of his competence, however, Miller was entitled to a review of the commissioners' decision to fire him that conformed to the statutory protections in K.S.A. 19-431(a) and to the due process rights of the Fourteenth Amendment to the United States Constitution. He got neither. I outline each of those deprivations and discuss the proper outcome in this case.[1]

[1]Given my assessment of K.S.A. 19-431(a) and Miller's due process rights, the majority's treatment of other issues is irrelevant. I, therefore, do not address the argument over the Wabaunsee County personnel policies or the treatment of them in the administrative review process or the district court. Relevant are the commissioners'

actions in dismissing Miller and the second administrative review of those actions. Because we review the administrative decision under the Kansas Judicial Review Act, K.S.A. 77-601, *et seq.*, the district court's ruling carries no particular import at this stage. The district court developed no factual evidence supplementing the administrative record.

*Statutory Provisions*

In each county, the board of county commissioners appoints an appraiser for a 4-year term to oversee property valuation and tax assessments. K.S.A. 2014 Supp. 19-430(a). A term of office for appraisers should be taken as legislatively crafted insulation against political vicissitudes and pressures that might otherwise sway their approach to their duties. See *Kennedy*, 264 Kan. at 790 (quoting district court's observation that the legislature sought to protect appraisers from "'the fluctuating whim of politics or personality'"). The commissioners, however, may approve an order removing an appraiser during the term upon "evidence satisfactory" to them demonstrating the appraiser's "incompetency or for any other cause." K.S.A. 2014 Supp. 19-431(a). The order is to set out the reasons for the commissioners' actions. Upon service of the order, the appraiser is "divested of all power," and the commissioners may name a temporary replacement. K.S.A. 2014 Supp. 19-431(a). The statute itself requires no advance notice to the appraiser and mandates no hearing of any kind before the commissioners.

But an appraiser dispossessed of his or her job may request a hearing in front of the department of revenue's director of property valuation or an agency designee to challenge the county commissioners' order. K.S.A. 2014 Supp. 19-431(a). Miller availed himself of that statutory protection.

In this case, an administrative law judge (ALJ), as the agency designee, heard testimony and received other evidence during a 3-day proceeding. Ultimately, the ALJ upheld the commissioners' firing of Miller. In doing so, the ALJ interpreted K.S.A. 19-431(a) to preclude a de novo review of the grounds for termination and as "dictat[ing]

25

deference to the judgment and decision" of the commissioners. The ALJ cited no authority supporting that construction of K.S.A. 19-431(a) and no particular reason justifying it. The idea seems to have originated with the lawyers for Wabaunsee County, and they have never offered any law backing up their notion. The majority buys off on that interpretation of K.S.A. 19-431(a) essentially as being so obvious as to defy debate— a rationale that's nearly as mystifying as it is self-serving.

The statutory language, fairly read, requires the director or, in this case, the ALJ to make an independent review and come to an independent conclusion warranting the removal of an appraiser. The key language in K.S.A. 2014 Supp. 19-431(a) requires the director to "make inquiry as to all facts connected with such . . . termination, and if after such inquiry . . . [,] *the director . . . shall determine that the appraiser. . . should be . . . terminated*, then the director . . . shall render an order removing such appraiser." (Emphasis added.)[2] The statute says the director is to determine if the appraiser should be fired. The decision is the director's own, based on his or her inquiry into the facts. That sounds like the director reaching a fresh conclusion about an appraiser's job performance unfettered by and without deference to the commissioners' actions.

[2]The statute could be characterized as verbose. The complete language of that portion of K.S.A. 2014 Supp. 19-431(a) states:

> "At the hearing the director of property valuation shall make inquiry as to all facts connected with such suspension or termination, and if after such inquiry is made the director of property valuation shall determine that the appraiser suspended should be removed permanently and such appraiser's office declared vacated or should be terminated, then the director of property valuation shall render an order removing such appraiser."

Had the legislature meant the director to defer, it easily could have said so. For example, the statute could have required the director to determine if the commissioners'

order removing an appraiser were supported by substantial evidence or if the commissioners' decision had a reasonable basis in the evidence. The legislature could have said the director ought to uphold what county commissioners do unless their actions are clearly erroneous. Those sorts of provisions would signal (and require) deference. But K.S.A. 2014 Supp. 19-431(a) hasn't language of that type. The legislature knows how to craft statutes requiring a hearing officer or some other reviewing authority to defer to the initial decision of another government actor. See, *e.g.*, K.S.A. 2014 Supp. 44-510j(d)(2) (workers compensation board shall affirm director's decision that medical provider has overcharged for services unless decision "not supported by substantial competent evidence"); K.S.A. 2014 Supp. 60-253(e)(2) (court must accept master's findings of fact "unless clearly erroneous"); K.S.A. 2014 Supp. 76-11a14 (board decision to discharge teacher to be upheld if hearing officer finds "any substantial evidence" supporting decision for reasons distinct from teacher's claimed exercise of "a constitutionally protected right"); K.S.A. 2014 Supp. 77-621(c)(7) (court may grant relief to party challenging agency action based on factual findings only if findings "not supported . . . by evidence that is substantial"). The omission of specific language from K.S.A. 2014 Supp. 19-431(a) requiring deference should be taken for what it logically indicates— legislative intent to afford appraisers a neutral forum to challenge anew their dismissals at the hands of local elected officials.

The majority's interpretation inserts something—a limitation on the director's review—not plainly apparent from the statutory language. The rules of construction are otherwise. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, Syl. ¶ 6, 241 P.3d 15 (2010) (The court "will not speculate on legislative intent and will not read the [statutory] provision to add something not readily found in it."); *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007) ( "A statute should not be read to add that which is not contained in the language of the statute or to read out what, as a matter of ordinary language, is included in the statute.").

27

Other aspects of K.S.A. 2014 Supp. 19-431(a) cut against curtailing the director's independent consideration of an appraiser's job performance and discharge. The director's factual inquiry is to be made in a hearing conducted under the Kansas Administrative Procedure Act, K.S.A. 77-501 *et seq.*, after the commissioners have issued their order and have completed whatever investigation they considered appropriate. Nothing in K.S.A. 2014 Supp. 19-431(a) suggests the director should take notice of, let alone bow to, the evidence the commissioners compiled. And nothing in the Administrative Procedure Act requires a reviewing authority to give deference to factual findings of the initial decisionmaker or to actions taken based on those findings. After inquiring into the facts, the director may issue an order terminating an appraiser. The director's order then permanently divests the appraiser of his or her post. So even if the director concludes an appraiser should be discharged, he or she does not ratify or affirm the commissioners' order but supersedes it with a new order. There isn't much in the way of deference on that score.

The majority, nonetheless, infers the director should defer to the commissioners because they have acted on "evidence satisfactory" to them. But the inference rests on a phrase pulled from a broader provision in K.S.A. 2014 Supp. 19-431(a) and, as a result, misses the legislative objective. That part of K.S.A. 2014 Supp. 19-431(a) permits the commissioners to act when they find satisfactory evidence "the appraiser . . . has failed or neglected to properly perform the duties of office, by reason of incompetency or for any other cause." The statutory language establishes county commissioners must have at least colorable evidence of good cause to move to discharge an appraiser. In other words, the provision makes clear appraisers do not serve at the pleasure of county commissioners, they are not at-will employees, and they cannot be removed on mere caprice. See *Smith v. Kansas Orthopaedic Center*, 49 Kan. App. 2d 812, 815, 316 P.3d 790 (2013) ("As a general rule, an at-will employee may be fired at any time for any reason."). Rather, appraisers may be discharged only for cause during their 4-year appointments. The requirement that the commissioners act on evidence demonstrates no legislative intent

28

that the director either rely specifically on that evidence, in contrast to the evidence developed through the review hearing, or that the commissioners' decision to terminate be accorded deference.

I would find that the ALJ in this case erred in giving deference to the Wabaunsee County Commissioners' decision to fire Miller. The ALJ should have made an independent determination whether the facts developed at the hearing demonstrated Miller to be incompetent or supported other good cause for his termination. Because the ALJ used the wrong legal standard, this court can and should reverse, consistent with the Kansas Judicial Review Act, K.S.A. 2014 Supp. 77-621(c)(4) (court may grant relief when "agency has erroneously interpreted or applied the law"). Were this the only problem, the appropriate remedy would be a remand to the ALJ to reconsider the evidentiary record in light of the correct standard required in K.S.A. 2014 Supp. 19-431(a)—that is, for an independent or de novo review giving no deference to the commissioners' decision.

The ALJ made no detailed credibility determinations and did not endeavor to resolve conflicting testimony presented at the hearing. Much of the evidence from the commissioners seemed to be hearsay. Although hearsay may be admitted in an administrative proceeding, secondhand accounts may inherently lack a measure of credibility. See K.S.A. 77-524(a) (Under Administrative Procedure Act, "[e]vidence need not be excluded solely because it is hearsay."); *In re Guardianship and Conservatorship of L.M.H.*, No. 108,297, 2013 WL 2395900, at *13 (Kan. App. 2013) (unpublished opinion) ("Hearsay is generally considered unreliable because the person making the statement—the declarant—does not appear in court . . . . [and] avoids the principal mechanisms for measuring the candor and reliability of a witness:  [1] the taking of an oath to tell the truth; [2] the rigor of cross-examination to test the statements; and [3] the factfinder's opportunity to gauge demeanor.").

29

The ALJ looked at the entire hearing record and simply concluded the commissioners had evidence they found satisfactory to warrant Miller's firing, thereby impermissibly giving deference to that decision and failing to make the statutorily required independent determination of Miller's job performance. This court cannot assess the evidence under the correct standard because we are in no position to weigh credibility based on a transcript as a proxy for the ALJ who saw and heard the witnesses testify. See *In re Guardianship and Conservatorship of L.M.H.*, 2013 WL 2395900, at *9 (judge seeing witnesses testify "is uniquely positioned" to make credibility determinations; appellate court "cannot replicate that perspective and, therefore, may not reweigh the record evidence"). In the absence of detailed credibility findings from the ALJ, we would also plainly exceed our authority under K.S.A. 77-621(c)(7) were we to weigh the evidence and determine whether there was good cause to terminate Miller.

But, as I discuss, constitutional due process considerations create another problem and require a different remedy.

*Due Process Rights*

*General Principles*

Government entities may not extinguish legally recognized property rights without affording the persons holding those rights procedural due process—an efficacious forum in which to show the action to be legally or factually unwarranted. If public employees have property rights in their jobs, they are entitled to due process before being permanently deprived of those rights or, in a word, fired. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Public employees haven't always been afforded constitutional protections in the workplace. As United States Supreme Court Justice Oliver Wendell Holmes, Jr., famously remarked in upholding the firing of a police officer during his earlier tenure on the Massachusetts

30

Supreme Judicial Court: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe v. City of New Bedford*, 155 Mass. 216, 220, 29 N.E. 517 (1892). Although Justice Holmes wrote specifically of free-speech rights, his comment captured the lack of constitutional protections extended government employees. The law has advanced considerably since then. But not today.

Property rights triggering due process protections must derive from a source independent of the Fourteenth Amendment. See *Loudermill*, 470 U.S. at 538. Here, a 4-year appointment for appraisers, as established in K.S.A. 2014 Supp. 19-430, that can be cut short only for cause, as provided in K.S.A. 2014 Supp. 19-431(a), creates a protected property right. See *Carmody v. Board of Trustees of University of Illinois*, 747 F.3d 470, 474 (7th Cir. 2014) (for-cause termination requirement creates protected property interest in government job). Nobody contends otherwise. The question then becomes what constitutional process is due Miller or any other public employee with a protected property right in his or her job.

As outlined by the United States Supreme Court, constitutionally sufficient procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of "life, liberty, or property." U.S. Const. amend. XIV, § 1; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). The Kansas Supreme Court similarly defines due process rights. See *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009).

The nature and extent of the due process protections must be calibrated to the significance of the property interest. *Mathews*, 424 U.S. at 349. The more important the interest at stake, the more elaborate the protections. See *Goldberg v. Kelly*, 397 U.S. 254, 262-63, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). The loss of a job has been recognized as the deprivation of an important interest triggering considerable due process for the government employee. *Loudermill*, 470 U.S. at 543. Termination is frequently referred to as the industrial equivalent of "capital punishment," meaning it is the harshest sanction an employer can impose on an employee. See *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 420-21, 101 S. Ct. 1836, 68 L. Ed. 2d 248 (1981) (Powell, J., concurring in part and concurring in judgment); *Hartford Municipal Employees Ass'n v. City of Hartford*, 128 Conn. App. 646, 662 n.3, 19 A.3d 193 (2011) (Flynn, J., dissenting); Oehmke, 2 Commercial Arbitration (3d ed. 2015) § 29:11 (many labor arbitrators "analogiz[e] employment termination to 'capital punishment in the work place'"). The financial impact can be overwhelming, and a for-cause termination may considerably lessen the chances for comparable reemployment.

Generally, a person must be afforded some measure of procedural due process before suffering the loss of a property right. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13, 16, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978). That is true for a government employee facing termination. See *Loudermill*, 470 U.S. at 545-46; *Jones v. City of Boston*, 752 F.3d 38, 57 (1st Cir. 2014) (government employer ordinarily cannot satisfy due process solely through procedures available after termination). The pretermination due process need not be extensive if the employee is afforded a full-blown posttermination hearing. See *Loudermill*, 470 U.S. at 547-48 (noting limited pretermination due process constitutionally adequate in light of more elaborate statutory posttermination hearing procedures); *Calhoun v. Gaines*, 982 F.2d 1470, 1477 (10th Cir. 1992) ("*Loudermill* established that some form of pretermination hearing, plus a full-blown adversarial post-termination hearing . . . are required."). The point is to avoid a wrongful deprivation. The courts will review the overall process—the combination of

pretermination and posttermination protections—for constitutional sufficiency, so long as there are minimal safeguards in place to head off the deprivation before it happens.

Government employees with protected property interests in their jobs must be afforded pretermination due process consisting of at least "oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story." *Loudermill*, 470 U.S. at 546; *Carmody*, 747 F.3d at 475 (pretermination due process outlined in *Loudermill* constitutionally adequate when employee receives "full" posttermination hearing). The opportunity, thus defined, becomes both a *meaningful* one and a constitutionally sufficient one. *Mathews*, 424 U.S. at 349 (Persons facing the loss of protected property rights must be "given a meaningful opportunity to present their case."); *Carmody*, 747 F.3d at 475 ("a meaningful opportunity to be heard before the employer decides on termination is a critical protection" even if the employee receives "robust" posttermination procedure).

*Miller Denied Due Process*

Measured against those settled constitutional principles, Miller received nothing resembling adequate pretermination due process from the commissioners. The majority cobbles together both the meeting on March 14, 2011, when the commissioners presented Miller with the written statement of termination, and the executive session with the commissioners a week later to suggest the requirements of *Loudermill* and the Due Process Clause had been satisfied. The exercise comes up short.

The commissioners' statement, set forth in full in the majority decision, contains three sentences outlining in exceptionally vague terms purported deficiencies in Miller's performance as appraiser. The statement refers to lack of training of employees without identifying particular individuals or circumstances. Similarly, the statement mentions tasks left incomplete or completed in the nick of time without giving any specifics as to

33

what happened or when. The statement suggests Miller reacted punitively to "employees . . . speaking out." But, again, it identifies no employee, the issue on which he or she spoke, or Miller's purported reaction. The fourth sentence mentions abstractly "issues about" leave time, clocking out for lunch, and use of a cell phone without particulars as to who was involved or when. Miller, however, likely would have understood the leave time and lunch issues, at least, to have been about his own conduct—they had been matters of contention between him and the commissioners.

The written statement fails to provide fair notice of the "charges" against Miller, as contemplated in *Loudermill*, since the description of the asserted deficiencies contains no specifics about what happened on a given occasion. Anything like "who, what, where, or when" details about the grounds supposedly establishing cause for Miller's termination cannot be found in the statement. Even if the generic characterization of those grounds were enough to give Miller notice, the statement then contains nothing outlining the commissioners' "evidence," the second requirement in *Loudermill* for minimally acceptable pretermination due process. The lack of detail in the statement precluded Miller from responding in any meaningful way to the allegations, particularly immediately after being given the letter as the commissioners demanded.

The circumstances demonstrate the commissioners really sought no response— meaningful or otherwise—to the allegations themselves. The balance of their statement couldn't be clearer. The commissioners informed Miller of their "consensus" that he and Wabaunsee County must "part ways." They didn't want to debate or even discuss that conclusion. The only remaining question for them was whether Miller would resign or be fired. In the statement, the commissioners offered him "the option to resign." And they went on to tell him they would be "open to negotiating a . . . separation agreement including a reasonable severance pay package." Finally, the commissioners informed Miller that they would "expect" his decision at their meeting the following Monday.

So upon receiving the written statement, Miller had no meaningful opportunity to present his side of the allegations to the commissioners in an effort to avert the loss of his job. The commissioners neither furnished Miller particulars about the incidents purporting to show the statutorily required cause for dismissal nor gave him time to address what he had been provided. That cannot be a *meaningful* opportunity to head off a mistaken or wrongful deprivation consistent with the Due Process Clause. Employees, at the very least, must be afforded enough information and detail about the claimed factual bases for their terminations to respond intelligibly. And they ought to be given enough time to gather their thoughts, if not some evidence, in making that response. What the commissioners delivered to Miller was an ultimatum that he could resign or be fired, not a constitutionally sufficient opportunity to set straight an erroneous deprivation.

Miller's meeting with the commissioners the next Monday didn't repair that due process violation. That was no more a meaningful opportunity to avert termination than was the commissioners' presentation of the written statement. The stated purpose of the second meeting was to receive Miller's decision on whether he would resign or be fired and (if he chose to quit) to negotiate a severance agreement. The commissioners did not intend the session to be a discussion of the validity of the grounds for Miller's departure. They clearly communicated that purpose to Miller, so he had no reason to regard the meeting as anything else.

The majority, nonetheless, treats those meetings singularly and collectively as a constitutionally sufficient pretermination opportunity for Miller to be heard as to why he ought to continue as county appraiser. But that would be true if constitutional due process required only that the person deprived of a protected property interest interact with the decisionmaker for some reason, thereby creating a chance for the person to bring up the loss however off-topic or tangential it might be under the circumstances. In other words, the majority equates a serendipitous chance with a constitutionally "meaningful opportunity" to dissuade the decisionmaker in a forum intended for that very purpose.

The two are far different, and the majority's take on due process would drain the requirement for a predeprivation hearing of any practical significance. A government employer could get by with handing an employee a general statement of the reasons for his or her termination and scheduling a meeting for the next day with the decisionmaker or a proxy to collect the individual's identification card and keys, to provide information on how to continue health insurance under COBRA, 29 U.S.C. § 1161, *et seq.*, and to present a "final notice" of discharge. But that exit meeting couldn't be the meaningful opportunity to prevent a wrongful termination envisioned in *Loudermill* or the Due Process Clause.

I would find that Miller did not receive constitutionally adequate pretermination due process.

In *Kennedy*, 264 Kan. at 798-99, the Kansas Supreme Court recognized K.S.A. 19-431(a) to be constitutionally deficient insofar as it fails to include a mechanism for pretermination due process. To uphold the statute, the *Kennedy* decision endorsed the district court's approach in treating the commissioners' termination of an appraiser absent pretermination due process as a suspension with pay until the director of property valuation conducts a hearing and issues an order. Applying that rule here, I would find Miller to have been on paid suspension until such time as the ALJ issued an order of termination following a legally adequate hearing. As I have said, Miller never got pretermination due process. And he has yet to get a sufficient hearing in front of the ALJ. Accordingly, Miller was on paid suspension for the remainder of his 4-year term, and Wabaunsee County owes him compensation from March 2011 through May 2013.

Whether the insufficiency of Miller's hearing in front of the ALJ reflects a statutory violation or a constitutional violation presents a question of academic interest in this case. The hearing failed in both respects. A statutory violation alone presumably would not trigger a constitutional deficiency if the hearing nonetheless provided due

36

process. See *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, 242, 305 P.3d 729 (2013) ("courts have long recognized that not every breach or violation of state law by a government agent gives rise to a constitutional wrong"), *rev. denied* 299 Kan. ___ (2014).

As I have already discussed, the ALJ misconstrued K.S.A. 19-431(a) by deferring to the commissioners' decision rather than making an independent determination of Miller's job performance. Based on the rule in *Kennedy*, that error coupled with the lack of pretermination procedural due process arguably required that Miller remain on paid suspension because he never received a statutorily compliant posttermination hearing. The *Kennedy* decision isn't entirely clear on that point. But under *Kennedy*, an appraiser must be treated as being on paid suspension if he or she has been denied both adequate pretermination due process and adequate overall due process. That's where Miller ended up.

Even if K.S.A. 19-431(a) called for the sort of deference the ALJ extended the commissioners here, the whole procedure for discharging Miller failed to give him constitutionally required due process. The inadequate pretermination due process afforded Miller coupled with a posttermination hearing aimed at determining whether the commissioners' decision simply had some support in the evidence does not satisfy the Due Process Clause. Minimal predeprivation due process—of the sort outlined in *Loudermill*—necessarily calls for a postdeprivation hearing independently examining the decisionmaker's justification for acting. *Cf. Mathews*, 424 U.S. at 339 & n.21 (recipient of social security disability afforded due process when a de novo administrative review of decision to terminate benefits was followed by posttermination judicial review for substantial competent evidence); *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996) ("[W]here the pre-termination process has been minimal, the employee's fate may depend entirely upon the post-termination hearing."). Conversely, a postdeprivation hearing deferring to the decisionmaker's action at least arguably could be

constitutionally acceptable if the person facing the loss had been given an elaborate predeprivation process permitting a detailed examination of the evidence and a studied opportunity to address directly the decisionmaker and to offer rebuttal evidence. See *Skogen v. City of Overland Park, Kansas*, 404 Fed. Appx. 327, 329-31 & n.2 (10th Cir. 2010). After all, if the predeprivation procedures themselves fully satisfy the Due Process Clause, the government entity need not provide *any* postdeprivation protections. See *Calhoun*, 982 F.2d at 1476-77; *Vukadinovich v. Board of School Trustees of Michigan City Area Schools*, 978 F.2d 403, 410-11 (7th Cir. 1992) (public school teacher not entitled to posttermination proceedings to satisfy Due Process Clause when he received notice of pretermination hearing 2 months in advance and was permitted to call witnesses and present other evidence, cross-examine school district's witnesses, and address decisionmaker directly at the hearing).

But in this case, Miller got nothing approaching constitutional due process from the commissioners before being dismissed, so the ALJ's deference to that decision failed to provide sufficient due process after the dismissal. The two in combination fared no better constitutionally—Miller was deprived of due process throughout the proceedings. Consistent with *Kennedy*, Miller's termination, therefore, must be treated as a paid suspension for the balance of his term of office. I would so hold.